## GREENWOOD *v.* FREIGHT COMPANY.

1. Where, by a State statute, the charter of a street-railroad company was repealed, and its franchises and track were transferred to another, and the company refuses to seek a remedy, a stockholder who asks an injunction on the ground that the statute impairs the obligation of a contract will have a standing in a court of equity.

2. Such a statute impairs the obligation of a contract, unless the legislature reserved the right to repeal the statute conferring the charter.

3. In Massachusetts such a reservation becomes part of every act of incorporation, by virtue of sect. 41, chap. 68, of the General Statutes, which declares, " Every act of incorporation passed after the eleventh day of March, in the year one thousand eight hundred and thirty-one, shall be subject to amendment, alteration, or repeal at the pleasure of the legislature."

4. The origin of this and similar clauses of reservation in the statutes of the States stated.

5. By the exercise of the repealing power reserved by such a clause the charter no longer exists, and whatever validity transactions entered into and authorized by it while it was in force may possess, there can be no new transactions dependent on the special power conferred by the charter. Such power is abrogated when the law granting it is repealed.

6. Neither the rights of the shareholders to the real and personal property of the corporation, nor rights of contract, or choses in action, are destroyed by such repeal; and if the legislature has provided no specific mode of enforcing and protecting such rights, the courts will do so by the means within their power.

7. If the legislature has the power to repeal the statute under which a company was organized, it can charter a new one, and confer the same powers on it as the former possessed; and, so far as the property or franchises of the old company are necessary to the public use, it can authorize the new one to take them, on making due compensation therefor.

8. A statute which, under this power, repeals an act of incorporation, and at the same time creates a new one with similar powers, the use of which requires the exercise of the right of eminent domain, is not in conflict with the Constitution of the United States, if it provides for compensation for the property of the extinct corporation so taken by the new one.

APPEAL from the Circuit Court of the United States for the District of Massachusetts.

The facts are stated in the opinion of the court.

The case was argued by *Mr. George F. Edmunds*, with whom was *Mr. Alonzo B. Wentworth*, for the appellant, and by *Mr. Darwin E. Ware* and *Mr. William G. Russell* for the appellees.

MR. JUSTICE MILLER delivered the opinion of the court.

The appellant, Greenwood, a citizen of the State of New York, brought his bill of complaint against the Union Freight Railroad Company, a corporation established by the laws of Massachusetts; against the Marginal Freight Railroad Company, likewise a Massachusetts corporation; against the city of Boston, its mayor and aldermen by name; and against the directors of the Marginal Freight Railroad Company,—all citizens of Massachusetts.

The Union Freight Railroad Company demurred to the bill, and the demurrer was sustained and the bill dismissed. It is this decree which we are called on to review on appeal taken by complainant.

The case made by the bill is that the Marginal Freight Railroad Company, which we shall hereafter call the Marginal Company, was organized under an act of the legislature of Massachusetts of the date of April 26, 1867, to build and operate a railroad through various streets in the city of Boston, " with all the privileges and subject to all the duties, restrictions, and liabilities set forth in the general laws, which now are or may hereafter be in force, relating to street-railway corporations, so far as they are applicable." The right of way of this company for part of its route lay over the line of a railway previously granted to the Commercial Freight Railroad Company, and the Marginal Company, by virtue of a provision in its charter, purchased and paid the Commercial Company for the joint use of its track, so far as it ran through the same streets. Afterwards, on May 6, 1872, the legislature of Massachusetts incorporated, by an act of that date, the Union Freight Railroad Company, which, by virtue of its charter and the authority of the board of aldermen of Boston, was authorized to run its track through the same streets and over the same ground covered by the track of the Marginal Company, and to take possession of the track of that and any other street-railroad company, on payment of compensation. This latter act also repealed the charter of the Marginal Company.

Sections 4, 6, and 7 of this act constitute the foundation of complainant's grievance, because they are said to impair the obligation of the contract found in the charter of the

Marginal Company, and, as they are short, they are here given verbatim : —

"SECT. 4. Said corporation may, within its authorized limits and for the purposes of this act, enter upon and use any part of the tracks of any other street railroad, and may suitably strengthen and improve such tracks; and if the corporations cannot agree upon the manner and conditions of such entry and use, or the compensation to be paid therefor, the same shall be determined in accordance with the provisions of the thirty-eighth section of chapter three hundred and eighty-one of the acts of the year eighteen hundred and seventy-one."

"SECT. 6. Said corporation shall, within four months from the passage of this act, take the tracks, or any part thereof, of the Marginal Freight Railway Company, subject to the laws relating to the taking of land by railroad companies and the compensation to be made therefor.

"SECT. 7. Chapter one hundred and seventy of the acts of the year eighteen hundred and sixty-seven, entitled an 'Act to incorporate the Marginal Freight Railway Company,' and so much of chapter four hundred and sixty-one of the acts of the year eighteen hundred and sixty-nine as relates to said Marginal Freight Railway Company, are hereby repealed."

The bill avers that the Union Freight Railroad Company has been organized, and is about to proceed in such a manner under this act that the Marginal Company will be utterly destroyed, and its several contracts, franchises, rights, easements, and properties will be impaired and destroyed, and the stock of complainant in said company will be destroyed and made valueless, and he will sustain irreparable damage and mischief.

Complainant then alleges that he had requested and urged the directors of the Marginal Company to take steps to assert the rights and franchises of the company against what he believes to be unconstitutional legislation, and that they had declined and refused to do so. He also sets out a vote or resolution of said directors, in which they respond to his demand by saying that the assertion of the rights of the corporation in the State courts is accompanied with so many embarrassments that they decline to attempt it. The prayer of the bill is for an in-

junction against all the defendants, to prevent these acts so injurious to the rights of the Marginal Freight Railroad Company.

The first ground of demurrer to this bill is that the complainant, whose interest is merely that of a stockholder in the Marginal Company, shows no right to sustain this bill, the object of which is to assert rights that are those of the corporation, which is itself under no disability to sue.

This whole subject was fully considered in the recent opinion of the court in *Hawes* v. *Oakland* (104 U. S. 450), in the decision of which we had the benefit of the able argument of counsel in this case, which was argued before that was decided. We refer to that opinion for the principles which must govern this branch of the present case. It is sufficient to say that this bill presents so strong a case of the total destruction of the corporate existence, and of the annihilation of all corporate powers under the act of 1872, that we think complainant as a stockholder comes within the rule laid down in that opinion, and which authorizes a shareholder to maintain a suit to prevent such a disaster, where the corporation peremptorily refuses to move in the matter.

As none of the defendants are charged with a purpose to exercise any power or to perform any acts not authorized by the terms of the act of May 6, 1872, the remaining question to be decided is, whether the features of that act to which complainant objects in his bill are beyond the power of the legislature of Massachusetts, or are forbidden by anything in the Constitution of the United States.

These exercises of power in the statute complained of are divisible into two : —

1. The repeal of the charter of the Marginal Company.

2. The authority vested in the Union Company to take its track for the use of the latter company.

It is the argument of counsel, pressed upon us with much vigor, that the two taken together constitute a transfer of the property of the one corporation to the other, and with it all the corporate franchises, rights, and powers belonging to the elder corporation.

We are not insensible to the force of the argument as thus stated ; and we think it must be conceded that, according to the

unvarying decisions of this court, the unconditional repeal of the charter of the Marginal Company is void under the Constitution of the United States, as impairing the obligation of the contract made by the acceptance of the charter between the corporators of that company and the State, unless it is made valid by that provision of the General Statutes of Massachusetts, called the reservation clause, concerning acts of incorporation; or unless it falls within some enactment covered by that part of its own charter which makes it "subject to all the duties, restrictions, and liabilities set forth in the general laws, which now are or may hereafter be in force, relating to street-railway corporations, so far as they may be applicable."

The first of these reservations of legislative power over corporations is found in sect. 41 of chap. 68 of the General Statutes of Massachusetts, in the following language: "Every act of incorporation passed after the eleventh day of March, in the year one thousand eight hundred and thirty-one, shall be subject to amendment, alteration, or repeal, at the pleasure of the legislature."

It would be difficult to supply language more comprehensive or expressive than this.

Such an act may be amended; that is, it may be changed by additions to its terms or by qualifications of the same. It may be altered by the same power, and it may be repealed. What is it may be repealed? It is the act of incorporation. It is this organic law on which the corporate existence of the company depends which may be repealed, so that it shall cease to be a law; or the legislature may adopt the milder course of amending the law in matters which need amendment, or altering it when it needs substantial change. All this may be done at the pleasure of the legislature. That body need give no reason for its action in the matter. The validity of such action does not depend on the necessity for it, or on the soundness of the reasons which prompted it. This expression, "the pleasure of the legislature," is significant, and is not found in many of the similar statutes in other States.

This statute having been the settled law of Massachusetts, and representing her policy on an important subject for nearly fifty years before the incorporation of the Marginal Company,

we cannot doubt the authority of the legislature of Massachusetts to repeal that charter. Nor is this seriously questioned by counsel for appellant; and it may, therefore, be assumed that if the repealing clause of the act of May 6, 1872, stood alone, its validity must be conceded. *Crease v. Babcock*, 23 Pick. (Mass.) 334; *Erie & N. E. Railroad Co.* v. *Casey*, 26 Pa. St. 287; *Pennsylvania College Cases*, 13 Wall. 190; 2 Kent, Com. 306.

It is argued, however, that the act is to be examined as a whole, and that as the earlier sections of the statute bestow upon the Union Company the right to seize the track and other property of the Marginal Company, this repealing clause is inserted merely to aid in the general purpose of transferring a valuable property and its appurtenant franchise from one corporation to another.

Whether this is sufficient to invalidate that branch or feature of the statute may depend somewhat upon the effect of the repealing clause upon the rights of the Marginal Company, as well as upon other matters; but we do not doubt the validity of the repealing clause of that act, whatever may have been the reasons which influenced the legislature to enact it, for the exercise of this power is by express terms declared to be at the pleasure of the legislature.

The forty-first section of chapter 68, as we have cited it, had a proviso, as it was originally enacted, " that no act of incorporation shall be repealed, unless for some violation of its charter or other default, when such charter shall contain an express provision limiting the duration of the same." So that charters subject to the pleasure of the legislative will were only those of perpetual duration. This proviso was, however, either repealed by express enactment or intentionally left out in subsequent revisions of the statutes, for it is not found in that of 1860, known as the General Statutes of Massachusetts, nor in that of the present year, just published, called the Public Statutes of Massachusetts.

What is the effect of the repeal of the charter of a corporation like this?

One obvious effect of the repeal of a statute is that it no longer exists. Its life is at an end. Whatever force the law

may give to transactions into which the corporation entered and which were authorized by the charter while in force, it can originate no new transactions dependent on the power conferred by the charter. If the corporation be a bank, with power to lend money and to issue circulating notes, it can make no new loan nor issue any new notes designed to circulate as money.

If the essence of the grant of the charter be to operate a railroad, and to use the streets of the city for that purpose, it can no longer so use the streets of the city, and no longer exercise the franchise of running a railroad in the city. In short, whatever power is dependent solely upon the grant of the charter, and which could not be exercised by unincorporated private persons under the general laws of the State, is abrogated by the repeal of the law which granted these special rights.

Personal and real property acquired by the corporation during its lawful existence, rights of contract, or choses in action so acquired, and which do not in their nature depend upon the general powers conferred by the charter, are not destroyed by such a repeal; and the courts may, if the legislature does not provide some special remedy, enforce such rights by the means within their power. The rights of the shareholders of such a corporation, to their interest in its property, are not annihilated by such a repeal, and there must remain in the courts the power to protect those rights.

And while we are conscious that no definition, at once comprehensive and satisfactory, can be here laid down of what those rights and powers are that remain to the stockholders and the creditors of such a corporation after the act of repeal, we are of opinion that the foregoing observations are sufficient for the case before us.

A short reference to the origin of this reservation of the right to repeal charters of corporations may be of service in enabling us to decide upon its office and effect when called into operation by the legislative exercise of the power.

As early as 1806, in the case of *Wales* v. *Stetson* (2 Mass. 143), the Supreme Court of that State made the declaration "that the rights legally vested in all corporations cannot be

controlled or destroyed by any subsequent statute, unless a power for that purpose be reserved to the legislature in the act of incorporation.". In *Trustees of Dartmouth College* v. *Woodward* (4 Wheat. 518), decided in 1819, this court announced principles on the subject of the protection that the charters of private corporations were entitled to claim, under the clause of the Federal Constitution against impairing the obligation of contracts, which, though received at the time with some dissatisfaction, have never been overruled in this court. The opinion in that case carried the protection of the constitutional provision somewhat in advance of what had been decided in *Fletcher* v. *Peck* (6 Cranch, 87) and the preceding cases, and held that it applied not only to contracts between individuals, and to grants of property made by the State to individuals or to corporations, but that the rights and franchises conferred upon private as distinguished from public corporations by the legislative acts under which their existence was authorized, and the right to exercise the functions conferred upon them by the statute, were, when accepted by the corporators, contracts which the State could not impair.

It became obvious at once that many acts of incorporation which had been passed as laws of a public character, partaking in no general sense of a bargain between the States and the corporations which they created; but which yet conferred private rights, were no longer subject to amendment, alteration, or repeal, except by the consent of the corporate body, and that the general control which the legislatures creating such bodies had previously supposed they had the right to exercise, no longer existed. It was, no doubt, with a view to suggest a method by which the State legislatures could retain in a large measure this important power, without violating the provision of the Federal Constitution, that Mr. Justice Story, in his concurring opinion in the Dartmouth College case, suggested that when the legislature was enacting a charter for a corporation, a provision in the statute reserving to the legislature the right to amend or repeal it must be held to be a part of the contract itself, and the subsequent exercise of the right would be in accordance with the contract, and could not, therefore, impair its obligation. And he cites with approval the observations

we have already quoted from the case of *Wales* v. *Stetson*, 2 Mass. 143.

It would seem that the States were not slow to avail themselves of this suggestion, for while we have not time to examine their legislation for the result, we have in one of the cases cited to us as to the effect of a repeal (*McLaren* v. *Pennington*, 1 Paige (N. Y.), 102), in which the legislature of New Jersey, when chartering a bank with a capital of $400,000 in 1824, declared by its seventeenth section that it should be lawful for the legislature at any time to alter, amend, and repeal the same. And Kent (2 Com. 307), speaking of what is proper in such a clause, cites as an example a charter by the New York legislature, of the date of Feb. 25, 1822. How long the legislature of Massachusetts continued to rely on a special reservation of this power in each charter as it was granted, it is unnecessary to inquire, for in 1831 it enacted as a law of general application, that all charters of corporations thereafter granted should be subject to amendment, alteration, and repeal at the pleasure of the legislature, and such has been the law ever since.

This history of the reservation clause in acts of incorporation supports our proposition, that whatever right, franchise, or power in the corporation depends for its existence upon the granting clauses of the charter, is lost by its repeal.

This view is sustained by the decisions of this court and of other courts on the same question. *Pennsylvania College Cases, supra; Tomlinson* v. *Jessup*, 15 Wall. 454; *Railroad Company* v. *Maine*, 96 U. S. 499; *Sinking Fund Cases*, 99 id. 700; *Railroad Company* v. *Georgia*, 98 id. 359; *McLaren* v. *Pennington, supra; Erie & N. E. Railroad* v. *Casey, supra; Miners' Bank* v. *United States*, 1 Greene (Iowa), 553; 2 Kent, Com. 306, 307.

It results from this view of the subject that whatever right remained in the Marginal Company to its rolling-stock, its horses, its harness, its stables, the debts due to it, and the funds on hand, if any, it no longer had the right to run its cars through the streets, or any of the streets, of Boston. It no longer had the right to cumber these streets with a railroad track which it could not use, for these belonged by law to no

person of right, and were vested in defendants only by virtue of the repealed charter.

It was, therefore, in the power of the Massachusetts legislature to grant to another corporation, as it did, the authority to operate a street railroad through the same streets and over the same ground previously occupied by the Marginal Company. Whether this action was oppressive or unjust in view of the public good, or whether the legislature was governed by sufficient reason in thus repealing the charter of one company and in chartering another at the same time to perform as part of its functions the duties required of the first, is not, as we have seen, a judicial question in this case. It may well be supposed, if answer were required to the complainant's bill, that it was made to appear that the Marginal Company had shown its incapacity to fulfil the objects for which it was created, and that another corporation, embracing larger area, connecting with more freight depots and wharves, and with more capital, could better serve the public in the matter for which both franchises were given.

That in creating the later corporation, whose object was to fulfil a public use, it could authorize it to take such property of other corporations as might be necessary to that use, as well as that of individuals, can hardly admit of question. Sect. 4 of the act gives this power to the Union Company with reference to the tracks of all street railroads in the city, and provides that in the event of an inability to agree with the owners of these tracks as to compensation, that shall be determined in accordance with the provisions of general laws previously enacted on that subject. To this there can be no valid legal objection. The property of corporations, even including their franchises, when that is necessary, may be taken for public use under the power of eminent domain, on making due compensation. *West River Bridge Co.* v. *Dix*, 6 How. 507; *Central Bridge Corporation* v. *City of Lowell*, 4 Gray (Mass.), 474; *Boston Water-power Co.* v. *Boston & Worcester Railroad Corporation*, 23 Pick. (Mass.) 360; *Richmond, &c. Railroad Co.* v. *Louisa Railroad Co.*, 13 How. 71.

But it is the sixth section of the act which is most bitterly assailed as an invasion of appellant's rights. It declares that

the Union Freight Company, within four months from the passage of the act, *shall* take the tracks, or any part thereof, of the Marginal Freight Company, subject to the laws relating to taking land by railroad companies and the compensation therefor. If, as the language seems to imply, the new company is bound to take so much of the track of the old one as it shall need or elect to use, and pay for it within four months, it is a requirement favorable to this company in preference to others, and with especial reference to the fact that its power to use the track for railroad purposes has ceased. If it is merely a permission to take the track on payment of compensation, it is still a favor to the Marginal Company to require this to be done within four months.

A suggestion is made that the Marginal Company acquired by purchase, for $15,000, the right to the use of the track of the Commercial Freight Company, and that this property stands on different grounds from the remainder of its track.

We are unable to discover any difference in principle. If the new company takes this track, or takes the Marginal Company's right to use it, we suppose the latter will be entitled to compensation for its interest in it, as for other property taken for a public use.

In fact, in regard to the whole question discussed as to the mode of making compensation, and its sufficiency to indemnify the Marginal Company for what is taken, it seems to us to be premature; for whenever the attempt to adjust the compensation is made, the question of its sufficiency and its compliance with the law on that subject may arise, and it can then be decided.

Nor are we satisfied of the soundness of the argument of counsel that the clause in the Marginal Company's charter, which declares it to be subject to the restrictions and liabilities contained in the general laws relating to street railways, withdraws it from the operation of the forty-first section of chapter 68 of the General Laws of the State. The latter clause declares *all* acts of incorporation subject to its provisions. This subjection is not impaired by the fact that a particular corporation is made by its charter subject to other laws also of a general character.

We are of opinion that the question of the repeal of the charter of the Marginal Company is to be decided by the construction of the general statute, whose effect and history we have discussed.

These considerations require the affirmance of the decree of the Circuit Court sustaining the demurrer to appellant's bill.

*Decree affirmed.*

MR. JUSTICE GRAY did not sit in this case, nor take any part in deciding it.