CARLISLE ST. JOHN and SALINA A. ST. JOHN, Appellees, v.
    THE IOWA BUSINESS MEN'S BUILDING & LOAN ASS'N.,
    Appellant.

**Corporations:** RIGHT TO DO BUSINESS: AMENDMENT OF ARTICLES.   A
1   corporation's right to do business is dependent upon legislative
    authority and its articles are always subject to amendment by
    the General Assembly, which may impose conditions on the
    right of a going concern to continue business and enforce the
    same by revoking its privileges for non-compliance.

**Building and loan associations:** LEGISLATIVE CONTROL: IMPAIRMENT
2   OF CONTRACTS.   The Act of the 28th General Assembly, relating
    to a reduction of the rate of interest to be charged by building
    and loan associations, by its terms applied to existing contracts
    but affords a corporation the option of complying there-
    with or suspending business; and is not therefore violative
    of the constitutional provision prohibiting legislative impair-
    ment of contracts.

**Same:** ESTOPPEL.   A building and loan association which elects to
3   comply with a legislative enactment and amends its articles
    in compliance therewith is in no position to say that the Act
    is unconstitutional, or to deny an acceptance of such amended
    articles by such of its members as have acquiesced therein.

**Cancellation of instruments.**   A borrowing member of a building
4   and loan association who has paid all that can be demanded of
    him is entitled to have his mortgage cancelled in an action for
    an accounting and need not wait for a foreclosure.

**Same.**   A building and loan association is bound to mature its stock
5   as soon as possible, and when matured a borrowing member is
    required to make no further payments, although the guaranteed
    limit is not reached.

**Estoppel.**   Where a statute regulating the business of a building
6   and loan association is by its terms made applicable to exist-
    ing as well as future business, the corporation cannot say that
    it does not so apply, because its articles amended to comply
    with the statute do not refer to existing business.

*Appeal from Polk District Court.*— HON. A. H. McVEY,
                    Judge.

Wednesday, November 20, 1907.

Suit for an accounting by plaintiffs, who were borrowers from defendant, a building and loan association; for a decree that plaintiff's obligations had been extinguished and their indebtedness paid; and for the cancellation of a mortgage given to secure the loan upon the record of Polk county. Defendant filed an answer and cross-bill, in which it asked the foreclosure of the mortgage. Decree for plaintiffs, and defendant appeals.— *Affirmed* .

*J. L. Carney,* for appellant.

*St. John & Stevenson,* for appellees.

Deemer, J.— Plaintiffs became borrowing members of defendant, a building and loan association, March 24, 1899, and they gave a note and a mortgage securing the same for $1,700, and had issued to them seventeen shares of stock in the association. Plaintiffs made eighty-six payments of dues, interest, and premiums, aggregating $2,412.30, and it is claimed that these payments matured the stock, and satisfied the loan. Defendant contends that by the terms of the agreement there is yet due it something like $300, and it asked for judgment in this amount, with a decree of foreclosure of the mortgage. The case was determined upon plaintiff's motion for a decree on the pleadings, and the appeal involves nothing save the proper construction of the pleadings and the law applicable to the admitted facts.

The contracts entered into in this case were similar to those involved in *Berlau v. Building & Loan Association,* reported in 125 Iowa, 22. By the terms of plaintiff's obligations, they were to make monthly payments of $15.30 on the first day of each month, provided that, when ninety-six full months had been duly paid, no further payments were to be required. The association guaranteed that the withdrawal

value of its stock would be $100 per share in ninety-six months if all payments were regularly made. The seventeen shares of stock issued to plaintiff were known as " Class G " under defendant's articles of incorporation and by-laws; and the articles of incorporation at the time of issue of this stock contained the following with reference thereto:

Section 7. Deposit stock, class " G," may be issued to be paid for in monthly payments, which shall be either ninety (90) cents per share, or some fractional multiple thereof, to be fixed in the application. On this stock there shall be no membership fee charged. This stock shall draw interest at the rate of 6 per cent. per annum for the average time of the investment, and shall not participate in the profits of the association to any greater extent. The interest shall be credited to the stock semi-annually on the first days of January and July each year, and when the payments made and interest credited, less the expense, amounts to one hundred dollars ($100.00) per share, it will be deemed matured, and no further interest shall be credited to said stock, and it may be withdrawn. Loans made upon this stock are presumed to continue until the stock is matured, but the board of directors may permit the borrower on application to pay off his loan previous to that time, in which case, he shall receive the amount paid into the loan fund together with 6 per cent. interest, compounded semi-annually. If any other payment than ninety cents per share be selected by the borrower, the settlement on the payment of a loan, shall be on the same pro rated basis, as on the ninety cents payment. The application for loans made on deposit stock, class " G," shall set forth plainly the manner of settlement, in case a repayment of the loan is allowed, by inserting the same in the application, or attaching thereto a slip which shall be signed by the borrower, and which shall be a part of the contract.

They also contained the following provision as to profits:

Article 7. Profits. After providing for the payments of the interest on full paid stock, and the 6 per cent. on

deposit stock, class " G," the net profits arising from the receipts of premiums, interest, fines, withdrawals, and other sources shall be apportioned semi-annually on the first days of January and July each year, to all the shares of installment and prepaid stock entitled to dividends, in proportion to the amount standing to the credit of the shares.

The Twenty-Eighth General Assembly passed an act known as chapter 69 of the enactments of that session, which went into effect May 3, 1900, a little more than a year after plaintiff became a member of defendant association, containing the following, among other provisions: " Section 1 forbids certain kinds of stock and requires all associations which have theretofore issued such forbidden stock to retire the same by January 1, 1901."

Section 4: Loans—Premium and Interest. Such associations shall have power to loan money to their members at such rate as may be agreed upon, and may collect premiums and interest thereon, but in no case shall the amount of premium and interest paid exceed eight per cent. per annum, but nothing herein shall be construed as prohibiting the payment of such interest and premium monthly, or at such time as may be provided for in the articles of incorporation.

Section 10: Articles Amended — Maximum Rate — Appointment of Receiver. The provisions of this act shall apply to all building and loan and savings and loan associations hereafter incorporated as well as those now incorporated under the laws of this State or doing business herein, and all such associations shall amend their articles of incorporation so as to conform to the provisions of this act. No such association shall be authorized or empowered to collect or receive premiums and interest from a borrower at a greater rate than eight per cent., and in case of an amendment to the articles of incorporation so that a lower rate of interest or charge for the use of money loaned to the borrowing member is authorized than the rate of interest charged upon loans, to members who have theretofore borrowed, shall in like manner be reduced to the

same rate as that permitted to borrowers after such amendments to the articles of incorporation, so that the interest charged under whatever name, whether charged as premium or interest to all members of the same association, shall be the same, all reductions of the rate of interest or premium charge to new borrowers shall be made and apply equally to those who have theretofore borrowed. In case any such association doing business in the State shall fail to amend its articles of incorporation in conformity herewith prior to July 15th, 1900, its authority to do business in this State shall be revoked by the executive council, and under the direction of the executive council application by the Attorney-General shall be made to the proper court for the appointment of a receiver to wind up the affairs of the association, and in such proceedings the amount due from the borrowing member on mortgages shall be ascertained in the manner provided in section 7 of this act, and the balance due on such mortgages shall be treated and considered as due within a reasonable time to be fixed by the court after the appointment of a receiver.

Pursuant to this act, defendant amended its articles of incorporation, and in its amended articles we find the following: " The rate of interest shall be eight per cent. per annum, payable monthly, at the office of the association, in Marshalltown, Iowa, at the same time and in the same manner as the monthly payments on the shares of stock become due. Delinquent payments shall draw interest at the rate of eight per cent. per annum.   .   .   .   Loans may be repaid at two years from date of mortgage or any anniversary thereafter, and the borrower shall be entitled to be credited with the total amount of all payments made on the stock to said association during the preceding year, and such payments shall be treated as a payment upon the mortgage." With reference to class " G " stock, we find this provision: " In order to secure to the borrower a level payment each month, the monthly payment of this class of stock shall increase each anniversary from date of said loan an amount equal to one-twelfth (1/12) of the total sum of decrease in annual inter-

est."   And the provision with reference to the distribution of profits reads in this wise:   "After providing for the expenses of conducting the business of the association as provided in article 10 hereof and the amount necessary for the maintenance of the contingent fund as provided in article 8 hereof, the balance or net profits arising from the receipts of interest, fines, withdrawals, and other sources of profits shall be apportioned semi-annually on the first days of January and July each year *pro rata* among the shareholders, according to the amount standing to the credit of each share."

Plaintiffs have made eighty-six payments upon their stock which they claim matured the same, while defendant insists that by the terms of their engagements they should have made ninety-six, and that something like $300 is yet due from them.   Plaintiffs insist that Acts of the 28th General Assembly and defendant's amended article of incorporation changed the relation of the parties under their previous contracts, while defendant claims that the act cannot have a retrospective operation, and that, if it is to be given such effect, it is unconstitutional and void because impairing the obligations of a contract then existing.   There is a practical concession that, if the Act of the 28th General Assembly applies, then plaintiffs have made all payments which may rightfully be demanded of them.   On the other hand, plaintiffs say that, even if the act does not apply, they have paid all that may rightfully be exacted.

The first question for solution, then, is: Do the Acts of the 28th General Assembly and defendant's amended articles apply?   It is the general rule that no act of the General Assembly can vary or destroy the obligations of a contract; but there is also a general provision to the effect that "every franchise obtained, used, or enjoyed by such corporation (corporations for pecuniary profit) may be regulated, withheld, or be subject to conditions imposed upon the enjoyment thereof

1. CORPORATIONS: right to do business: amendment of articles.

whenever the General Assembly shall deem necessary for the public good." And there is a general rule in the Constitution permitting the amendment or repeal of all laws for the organization or creation of corporations. Article 8, section 12. Appellant contends, however, that all laws shall have a prospective and not a retrospective operation in the absence of direct provision to the contrary, and that, in no event, may the Legislature impair the obligations of a contract. With these premises, it insists that plaintiffs are bound by the terms of their original contract, and that they must make ninety-six payment in order to mature their stock. The general principles involved in these contentions are well understood. Unless otherwise stated, all laws are presumed to operate prospectively, and not retrospectively, and no act of the Legislature may impair the obligations of a contract. But a corporation under our laws has no absolute right to do business in this State, and its articles of incorporation are at all times subject to amendment by the General Assembly. Conditions may at any time be imposed upon a corporation and enforcement thereof assured by revoking their privileges in the event of noncompliance.

By the express provision of section 10 of the act now before us, it was to apply to all building and loan associations then doing business in the State and to members who had theretofore borrowed of such corporation; so that the act in terms unquestionably has application to plaintiffs' contract. By the terms thereof it is provided that members who have theretofore borrowed shall have the rate of interest reduced, so that the amount charged whether as premium or interest shall be the same to all. This, of course, had the effect of changing and impairing plaintiff's contract with defendant; and the primary question is: Is the act violative of the constitutional provision prohibiting legislative impairing of the obligations of a contract? It will be noted that the act itself does not attempt to change the contracts of

2. Building and Loan Associations: legislative control: impairment of contracts.

members, but it does provide that, if the association failed to comply therewith on or before July 15, 1900, its authority to do business should cease, and its affairs should be wound up, and settlements made with all members according to the provisions of the act.   Defendant then had the option of complying with the law and adjusting its outstanding contracts on the basis outlined in the act, or of going out of business and settling with its members upon the basis fixed in section 7 of the act.   It had no constitutional or other right to continue in business indefinitely or for any other time than the Legislature might see fit to permit.   This is a fundamental principle of corporate law under the reserved power now generally given to the Legislature.   *Bishop v. Brainerd,* 28 Conn. 289; *In re Brooklyn R. R.,* 72 N. Y. 245 (75 N. Y. 335, 81 N. Y. 69).   Of course, the relation between the corporation and its stockholders cannot be changed or disturbed against their will.   All that the Legislature may do in this respect is to grant the power, and then it is for the corporation to accept or not as it pleases. *Kenosha Co. v. Marsh,* 17 Wis. 13.

Whatever might be said as to the rights of the parties had the defendant not complied with the provisions of the act now before us, it did amend its articles and comply with

3. Same:   the terms of the new law, and, having done
estoppel.   so, it is bound thereby to all its members who
seek to take advantage thereof.   Defendant had two courses open to it:   One to quit doing business and settle up its affairs, and the other to comply with the law, amend its articles, and give to its members the benefit of the new law. It chose the latter course, and, having done so, it is in no position to say that the act under which it did these things is unconstitutional and void.   *Durfee v. Old Colony R. R.,* 5 Allen (Mass.) 230; *Greenwood v. Railroad Co.,* 105 U. S. 13 (26 L. Ed. 961); *Union Pacific R. R. v. U. S.,* 99 U. S. 700 (25 L. Ed. 496); *Edworthy v. Ass'n,* 114 Iowa, 220; and *Briggs v. Ass'n,* 114 Iowa, 232, are not in point on this

proposition; for in neither case did the defendant comply or attempt to comply with the amendatory act. In other words, there was no acceptance thereof by the parties in interest. Defendant insists, however, that there is no evidence that plaintiffs ever assented to the new articles of incorporation or the amendment to the old; and it is true that no express assent is shown, save as plaintiffs may be held to have assented by the bringing of this suit. But proof of express acceptance is not necessary. Plaintiffs expressed no dissent, but allowed the association to go ahead under its amended articles incurring additional liabilities, paying their premiums, interest, and dues, and taking no steps to enforce their original contract. Under such circumstances, there was either an implied acceptance or plaintiffs are estopped from denying an acceptance of the provisions of the new or amended articles. *Chubb v. Upton,* 95 U. S. 665 (24 L. Ed. 523); *Danbury R. Co. v. Wilson,* 22 Conn. 435; *Sparrow v. Railroad,* 7 Ind. 369. Moreover, as the amendment in this case was beneficial to the members, assent thereto will be presumed. *Commonwealth v. Cullen,* 13 Pa. 133 (53 Am. Dec. 450); *Bangor R. R. v. Smith,* 47 Me. 34. We are constrained to hold that the act in question, because of defendant's conclusion to take advantage thereof by filing its amended articles and continuing in business, became binding upon the defendant, and that plaintiffs are presumed to have accepted it or are estopped from denying that they did, and that the case is governed by chapter 69, Acts 28th General Assembly, and the defendant's amended articles. These provide, in substance, that the rate of interest shall not exceed the sum of eight per cent. per annum, payments to be credited on anniversary days and payments on stock to be treated as payments upon the mortgage.

Defendant argues, however, that this rule applies only in cases of foreclosure. But we do not think this is so. A borrower does not have to wait until sued in order to have an accounting and a release of his mortgage. If he has paid all

that may be demanded of him in a foreclosure proceeding, he is entitled to have his mortgage canceled and released, and need not wait for the corporation to bring suit.   Moreover, section 10 of the act provides that no association shall be allowed to collect from a borrower in premiums and interest more than eight per cent.   Section 16 also provides that the rate of interest shall not exceed eight per cent.   That being true, plaintiffs have paid all that may be rightfully demanded of them, and their mortgage should be canceled and all their papers re-delivered to them as prayed.

**4. Cancellation of Instruments.**

A fundamental fallacy in the argument for the defendant is involved in the assertion that plaintiffs absolutely agreed to make ninety-six payments before their stock would mature.   While this is not controlling, it is important to note that nowhere did plaintiffs so agree.   The defendant guaranteed that the payments should not exceed ninety-six and, if it be a building and loan association and not a banking establishment, it was bound to mature the stock as soon as it could do so from its earnings and other resources in which plaintiffs were entitled to share.   It may be that its guaranty was *ultra vires,* but it was not illegal, and, as held in other cases before this court, it could not be heard to say that its guaranty was void because beyond its power.   See *Field v. Ass'n,* 117 Iowa, 185.

**5. Same.**

Further claim is made that, as defendant's amended articles do not refer to existing contracts, they were in no manner changed, and the new law does not apply.   This position is also unsound; for it was the Legislature which made the change by the act in question, and, as defendant chose to accept the provisions of that act and to conduct its business thereunder, it cannot be heard to say that existing members may not take advantage of the law.

**6. Estoppel.**

Other questions are discussed by counsel, but the one we have considered disposes of the case.

The decree of the district court seems to be correct; and it must be *affirmed*.