EL PUEBLO DE PUERTO RICO, querellante, *v.* THE FAJARDO SUGAR COMPANY OF PORTO RICO, THE FAJARDO SUGAR GROWERS' ASSOCIATION y LOÍZA SUGAR COMPANY, demandadas.

Núm. 1.—*Sometido:* Febrero 16, 1937. *Resuelto:* Julio 12, 1937.

*J. Henri Brown, Jaime Sifre, Jr.,* y *José A. Poventud* y *Arturo Aponte,* abogados, respectivamente, de las demandadas; *Hon. Procurador General B. Fernández García, Miguel Guerra Mondragón, R. Rivera Zayas* y *Lester P. Schoene,* abogados del querellante.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

Cada una de las tres corporaciones demandadas ha formulado, por separado, excepciones previas a la querella enmendada. Las consideraremos y resolveremos en una sola opinión y en el mismo orden en que nos han sido sometidas:

1ª. Que esta Corte Suprema carece de jurisdicción para conocer de este procedimiento de *Quo Warranto,* porque las leyes núm. 33 de 22 de julio de 1935 y núm. 47 de 7 de agosto de 1935 son

inválidas y nulas por haber sido decretadas por la Legislatura In-sular en exceso de sus facultades legislativas y en contravención de las disposiciones de la Ley Orgánica de Puerto Rico y de la Constitución Federal.

Las mismas cuestiones legales presentadas por esta excepción y los mismos razonamientos aducidos en su apoyo fueron considerados por esta Corte Suprema al resolver las mociones para la desestimación de la querella original, presentadas por cada una de las demandadas. Y no habiéndose aducido nuevas razones o fundamentos legales que nos obliguen a variar de criterio, por las razones expuestas en la opinión emitida por esta Corte en el caso del epígrafe, el día 4 de junio de 1936 y publicada en 50 D.P.R. 163, debe declararse sin lugar la excepción previa de falta de jurisdicción.

2ª. Que la querella enmendada no aduce hechos suficientes para constituir una causa de acción.

La argumentación que en sus alegatos presentan las partes querelladas, para atacar la suficiencia de la querella, es en gran parte una repetición de los argumentos aducidos en apoyo de la excepción de falta de jurisdicción, la que ya hemos desestimado.

Hemos examinado cuidadosamente la querella enmendada. Ajustándose a la regla de procedimiento que requiere que las alegaciones deben contener solamente una exposición de los hechos básicos (*ultimate facts*) sobre los cuales se funda el derecho del demandante, la querella en este caso alega: Que "The Fajardo Sugar Company of Puerto Rico", a la que nos referiremos en lo sucesivo como "La Fajardo", es una corporación organizada bajo las leyes de Puerto Rico y autorizada para dedicarse a la agricultura y a la fabricación de azúcar y para adquirir bienes inmuebles en esta Isla; que su carta constitutiva (cuarta, párr. 10) dispone que su derecho a poseer o controlar tierras en Puerto Rico estará limitado a 500 acres solamente, de acuerdo con las disposiciones de la sección 3 de la Resolución Conjunta núm. 23 del Congreso, aprobada en mayo 1º. de 1900; que en 1919 dicha corporación adquirió

todas las propiedades y el activo de la "Fajardo Sugar Company", de New York, la cual durante los años, 1905 a 1909, por sí misma o por instrumentalidad de "The Fajardo Sugar Growers' Association" había adquirido la propiedad o el control de unos 30,700 acres de terreno; que la otra querellada, "The Fajardo Sugar Growers' Association", a la que nos referiremos en lo sucesivo como "La Growers" fué organizada bajo las Leyes del Estado de New York, para la siembra y cultivo de cañas de azúcar y está facultada para adquirir las tierras que fueren necesarias para tales fines, dentro de los límites fijados por la ley; y que aunque "La Growers" se describe a sí misma como una compañía por acciones, dicha entidad es para todo propósito práctico una corporación, de acuerdo con la Constitución, leyes y jurisprudencia del Estado de New York, bajo cuyas leyes fué organizada, y también porque por sus Cláusulas de Asociación, por sus métodos de negociar, por sus contratos y por cierta escritura de fideicomiso, se ha investido a sí misma de los atributos de una corporación. Y después de hacer una relación detallada de las disposiciones de las cláusulas de asociación por virtud de las cuales dicha asociación se ha investido con los principales atributos de una entidad corporativa, la querella alega que "La Growers" lleva a cabo todas sus operaciones de crédito a nombre de "La Fajardo", mediante cierto contrato celebrado en marzo 27 de 1923, por el cual dicha corporación se comprometió a dirigirse solamente contra el activo de "La Growers" para el solvento de cualquier deuda de esta última a favor de "La Fajardo"; que en virtud de dicho arreglo "La Growers" evita toda responsabilidad de sus miembros por las deudas de la asociación; que se obtiene garantía ulterior, contra responsabilidad de los miembros individuales por las deudas de la asociación, por medio del depósito de 2,999 acciones, de un total de 3,020 acciones del capital de la asociación, en fideicomiso, con el convenio de que todos los dividendos que devenguen dichas acciones han de ser pagados a "La Fajardo" para su distribu-

ción pro rata entre sus accionistas, pero sin imponer responsabilidad alguna a los beneficiarios de tal fideicomiso por las deudas de "La Growers."

Continúa alegando la querella, que la "Loíza Sugar Company", a la que denominaremos en lo sucesivo "La Loíza", es una corporación organizada bajo las leyes de Puerto Rico y facultada para comprar o arrendar bienes inmuebles; que sus Cláusulas de incorporación (Sección Cuarta, inciso (c)) proveen expresamente que su derecho a poseer y controlar tierras en Puerto Rico estará limitado a 500 acres solamente, describiéndose tal limitación de acuerdo con la ley del Congreso de mayo 1°. de 1900; que en violación de su carta constitutiva y de la ley del Congreso, en octubre 6 de 1925 "La Loíza" era dueña y controlaba unos 11,038.13 acres de tierra en esta Isla; que en octubre 6, 1925, "La Fajardo" compró todas las acciones de "La Loíza", adquiriendo así el dominio y control de todas las tierras de labrantío de dicha corporación y el manejo de sus negocios; que en 10 de enero de 1935 "La Loíza" vendió a "La Growers" todas las tierras de labranza que poseía y controlaba en ésta Isla, con excepción de 598.72 acres, habiéndose verificado tal traspaso con el fin de ocultar la entidad verdaderamente dueña de las mismas; que la suma total de tierras de labrantío de que en la actualidad es dueña "La Growers", y en las cuales se dedica a la agricultura, monta a 23,123.41 acres.

Se alega también en la querella que en 19 de marzo de 1919 "The Greenwich Trust Company", corporación del Estado de Connecticut, y el señor John S. Keith, quien actuaba a instigación y bajo el control y a nombre de "La Fajardo" y de "La Growers", celebraron un contrato de fideicomiso (trust) por el cual 2,999 de las 3,020 acciones del capital social de "La Growers" fueron depositadas con la compañía fideicomisaria antedicha, la cual habría de recibir todos los dividendos que acrezcan a dichas acciones y pagarlos a "La Fajardo" para ser distribuídos entre los accionistas de esta última corporación; que de acuerdo con los informes que

tiene el querellante, los que cree ciertos, por virtud de dicha escritura de fideicomiso "La Fajardo" obtuvo el completo dominio de las propiedades y negocios de "La Growers", el cual dominio ejercita activamente, y se obligó a hacerse cargo de cualquier pérdida económica que pueda ocurrir en los negocios de dicha asociación; que los administradores, oficiales y fiduciarios de "La Growers" han sido con frecuencia a un mismo tiempo oficiales o directores de "La Fajardo" y han actuado y continúan actuando a instigación, bajo el control y a nombre de dicha última corporación; que mediante el control que ejerce sobre los representantes de "La Growers" y por medio del contrato de fideicomiso ya mencionado, "La Fajardo" domina y controla las propiedades y negocios de "La Growers" tan efectivamente como si fueran de su propiedad.

Y se alega por último que por contrato celebrado en marzo 27 de 1923, "La Growers" se comprometió a entregar sus cañas a "La Fajardo", comprometiéndose ésta a comprar dichas cañas a precios corrientes, basados sobre un 60 por ciento del contenido de azúcar, pero nunca por menos del costo de producción de la caña, el que incluirá gastos de arriendos, intereses y contribuciones; que de acuerdo con los términos de dicho contrato la siembra, recolección y entrega de la caña no pueden realizarse bajo una razonable expectativa de provecho; que por medio de dicho contrato y del referido instrumento de fideicomiso, "La Fajardo" absorbe las ganancias y las pérdidas que puedan ocurrir en el negocio y operaciones de "La Growers"; que la suma total de tierras de labrantío que "La Fajardo" posee o controla en la actualidad, tanto por sí misma como por medio de sus dos subsidiarias o agentes, las otras dos demandadas, asciende a 23,800 acres, hecho que es contrario a la política pública de El Pueblo de Puerto Rico y que está en patente conflicto con el bienestar económico de la comunidad.

Si aceptamos como debemos aceptar para los fines de una excepción previa de falta de causa de acción, que los hechos alegados son ciertos, la querella a nuestro juicio alega

hechos suficientes para constituir una causa de acción contra todas y cada una de las tres corporaciones demandadas.

Considerada en conjunto, la querella expone en términos claros y precisos la concepción, desarrollo y existencia de un plan preconcebido y realizado con el propósito de evadir y violar las restricciones legales que prohiben a las corporaciones agrícolas tener el dominio o control de más de 500 acres de tierras dedicadas a la agricultura. En ese plan se hace figurar como actora principal (*master mind*) a The Fajardo Sugar Company of Puerto Rico, y como partes secundarias, sujetas al control y dirección de la primera, a "Loíza Sugar Company" y "The Fajardo Sugar Growers' Association." Los medios y procedimientos de que se ha valido "La Fajardo" para adquirir y tener bajo su dominio o control 23,800 cuerdas de tierras laborables aparecen específicamente alegados en la querella, y demuestran prima facie que la ley ha sido violada por las demandadas.

Debe desestimarse esta excepción.

■■ 3ª. La Resolución Conjunta del Congreso de mayo 1°, 1900, discrimina arbitraria, caprichosa e inconstitucionalmente contra las corporaciones agrícolas, favoreciendo a las sociedades civiles y otras entidades dedicadas también a la agricultura, con infracción a la Enmienda V de la Constitución.

La parte pertinente de dicha Resolución Conjunta (31 Stat. at Large, Res. 23, p. 715) lee así:

"Section 3.— . . . . No corporation shall be authorized to conduct the business of buying and selling real estate or be permitted to hold or own real estate except such as may be reasonably necessary to enable it to carry out the purposes for which it was created *and every corporation hereafter authorized to engage in agriculture shall by its charter be restricted to the ownership and control of not to exceed five hundred acres of land; and this provision shall be held to prevent any member of a corporation engaged in agriculture from being in any wise interested in any other corporation engaged in agriculture.* Corporations, however, may loan funds upon real estate security, and purchase real estate when necessary for the collection of loans, but they shall dispose of real estate so obtained within five

years after receiving the title. Corporations not organized in Porto Rico, and doing business therein, shall be bound by the provisions of this section so far as they are applicable.'' (Itálicas nuestras.)

Dicha sección ha sido traducida al castellano así:

''Ninguna sociedad estará autorizada para efectuar negocios de compra y venta de bienes raíces; ni se le permitirá poseer o tener dicha clase de bienes a excepción de aquellos que fuesen racionalmente necesarios para poder llevar adelante los propósitos a que obedeció su creación; *y, en lo sucesivo, el dominio y manejo de terrenos de toda sociedad autorizada para dedicarse a la agricultura, estarán limitados, por sus estatutos, a una cantidad que no exceda de quinientos acres; y esta previsión será adoptada para impedir a cualquier miembro de una sociedad agrícola que tenga interés de ningún género en otra sociedad de igual índole.* Podrán, sin embargo, las sociedades efectuar préstamos, con garantías sobre bienes raíces, y adquirir éstos cuando sea necesario para el cobro de los préstamos; pero deberán enajenarlos dentro de los cinco años desde que reciban el título de propiedad de los mismos. Las sociedades que no hayan sido organizadas en Puerto Rico, y que hagan negocios allí, estarán obligadas a cumplir lo dispuesto en esta Sección, hasta donde sea aplicable.'' (Itálicas nuestras.)

La versión al castellano de las palabras que hemos puesto en itálicas en el texto inglés es tan defectuosa que, aun cuando el texto inglés es el que debe prevalecer, nos creemos obligados a hacer nuestra propia traducción para que ella sirva de base a la interpretación que hemos de dar al estatuto. La traducción correcta, a nuestro juicio, es la siguiente:

''Y toda corporación que en lo sucesivo fuere autorizada para dedicarse a la agricultura será limitada por sus cláusulas de incorporación al dominio y control de no más de quinientos acres de tierra; y esta disposición será interpretada en el sentido de impedir a cualquier miembro de una corporación dedicada a la agricultura que esté interesado en alguna forma en cualquiera otra corporación dedicada a la agricultura.''

Arguyen las corporaciones demandadas que la disposición legal transcrita es anticonstitucional porque les niega la ''igual protección de las leyes'', estableciendo un discrimen en contra de las corporaciones agrícolas y en favor de las

sociedades civiles agrícolas. Los numerosos casos citados en apoyo de esta contención son inaplicables al de autos. Se refieren todos ellos a estatutos de carácter fiscal por los cuales se imponen contribuciones a ciertas corporaciones ya existentes, eximiendo de su pago a otras entidades corporativas dedicadas a negocios similares.

No se trata en el caso de autos de corporaciones ya creadas al amparo de una ley anterior. La limitación provista por el estatuto que estamos interpretando es aplicable solamente a "every corporation hereafter authorized to engage in agriculture"— toda corporación que en lo sucesivo fuere autorizada para dedicarse a la agricultura. "The Fajardo Sugar Company of Puerto Rico" y "Loíza Sugar Company" fueron organizadas bajo las leyes de Puerto Rico con posterioridad a la fecha en que empezó a regir la Resolución Conjunta de mayo 1º. de 1900, y en obediencia a sus disposiciones una y otra insertaron en sus cláusulas de incorporación la limitación estatutaria que les prohibe tener el dominio y control de tierras laborables en exceso de quinientos acres. Sin la aceptación e inserción de esos requisitos del estatuto, dichas corporaciones no hubiesen podido adquirir jamás existencia legal. Y "The Fajardo Sugar Growers' Association", al dedicarse voluntariamente a hacer negocios y a la agricultura en Puerto Rico, quedó obligada a respetar las disposiciones del estatuto.

La corporación, según la definición del Chief Justice Marshall, es un ser artificial, invisible, intangible, que existe solamente ante los ojos de la ley; y puede ser creada solamente de acuerdo con los términos de una disposición legislativa. *Darmouth College* v. *Woodward*, 4 Wheaton, 518, 636; *Feiner* v. *Reiss*, 98 N. Y. App. Div. 45; *Pennsylvania R. R.* v. *Canal Com'rs*, 21 Pa. St. 9; *Stowe* v. *Flagg*, 72 Ill. 397; *Hoadley* v. *County Commissioners of Essex*, 105 Mass. 519.

La incorporación, como instrumentalidad para dedicarse a cualquiera clase de negocios, no es un derecho inherente al ciudadano. Es un privilegio que el Estado concede a un nú-

mero de ciudadanos, para que puedan actuar como si fueran una sola persona, bajo un nombre colectivo, con responsabilidad limitada. Siendo la corporación una criatura de la ley positiva, sus derechos, facultades y deberes no pueden ser otros que aquéllos prescritos por el estatuto que le dió existencia legal. Véanse: *U. S.* v. *Trinidad Coal Company*, 137 U.S. 160; *In Re Gibbs Estate,* 157 Pa. St. 59.

Los estados se han reservado en sus leyes reguladoras de las corporaciones la facultad de limitar el capital social; especificar la clase de negocios a que podrán dedicarse esta clase de asociaciones; fijar el valor nominal y la clase de acciones en que podrá dividirse el capital social; enumerar los poderes que una corporación podrá ejercitar en el desarrollo de sus negocios; fijar la cantidad y la clase de obligaciones que podrá contraer, etc.

Además de los poderes que expresamente les confiera su carta constitutiva (*charter*), las corporaciones pueden ejercitar todos aquellos poderes implícitos (*implied powers*) que sean indispensablemente necesarios, convenientes o adecuados para el ejercicio de sus facultades expresas.

Las corporaciones demandadas fueron organizadas bajo una ley que expresamente les prohibe poseer o controlar más de quinientos acres de tierras de labrantío, prohibición que se hizo constar en términos expresos y claros en sus cláusulas de incorporación. No nos convence el argumento de que dichas corporaciones necesitan más de quinientos acres para poder realizar el propósito principal para el que fueron organizadas—la siembra de cañas y la fabricación de azúcar—y que por lo tanto tienen poderes implícitos para poseer y controlar el número de acres que sean necesarios para tales fines, pues la doctrina de los poderes implícitos no puede ser invocada ante una prohibición expresa del estatuto, especialmente cuando esa prohibición ha sido llevada al estatuto para dar validez y efecto a la política pública enunciada por el Estado creador de dichas corporaciones. El fin que persigue el estatuto es impedir el acaparamiento de las tierras laborables

de esta pequeña Isla de 3,435 millas cuadradas, por un pequeño número de corporaciones—monstruos Frankenstein, como las llama el Juez Brandeis en *Liggett Co.* v. *Lee,* 288 U. S. 517, 548—y proteger a su población de 1,700,000 almas contra un monopolio que acabaría por convertirles en meros siervos de una gran factoría azucarera.

Somos de opinión que la Resolución Conjunta de mayo 1º. de 1900 no viola derecho alguno de las corporaciones demandadas, ni les niega en manera alguna la igual protección de las leyes.

■ Debemos sostener además que las corporaciones demandadas están impedidas (*estopped*) de alegar la inconstitucionalidad del estatuto. Sus incorporadores solicitaron y obtuvieron del Estado una franquicia corporativa redactada de acuerdo con el estatuto que ahora atacan, y no puede permitírseles que rechacen ahora sus limitaciones, sin que renuncien al mismo tiempo los beneficios y privilegios de la incorporación. Dice Corpus Juris:

"Cuando se han organizado corporaciones y éstas proceden a hacer negocios bajo las disposiciones de un estatuto, y reciben beneficios a virtud del mismo, no tienen derecho a ser oídas en cuanto a la alegación de que el estatuto es inconstitucional." 12 C. J. 770, sección 194.

Véanse: *Grand Rapids & Indiana Railway Co.* v. *Osborn,* 193 U. S. 17; 48 L. Ed. 598, 604; *St. John et al.* v. *Iowa Business Men's Building & Loan Ass'n.,* 136 Iowa 448, 113 N. W. 863; *Minneapolis & St. L. R. Co.* v. *Gourie & N. W. Ry Co.,* 123 *Iowa,* 543, 99 N. W. 181, 183; *State ex rel People's Fire Ins. Co.,* v. *Michel,* 125 La. 55, 51 So. 66.

El estatuto en cuestión no es una ley de carácter mandatorio. Es por su naturaleza opcional. Los incorporadores de las entidades demandadas no estaban obligados a elegir la forma corporativa para el desarrollo de sus negocios en Puerto Rico. El Estado les brindó las oportunidades y privilegios de la incorporación, pero sujetos a todas aquellas limitaciones y restricciones provistas por el mismo estatuto y por las demás

leyes vigentes para la protección de la comunidad insular. La Corte Suprema de Massachusetts, en un caso similar al de autos, se expresó así:

"Ésas fueron las condiciones bajo las cuales la corporación nació y aceptó su franquicia. Si estas restricciones fueron originalmente legales, y si no han sido rescindidas o afectadas por subsiguientes modificaciones de las mismas, la corporación no puede, mientras continúe ejercitando sus franquicias, quejarse de que se le obligue a cumplir las condiciones. Es exactamente igual a si la corporación hubiese sido creada por una carta constitutiva especial que contuviera esas mismas restricciones. La corporación no puede levantar cuestión alguna sobre la constitucionalidad de un procedimiento que se ajusta a lo dispuesto en la carta constitutiva que ella aceptó de buen grado. Nació y se comprometió a existir sujeta a estas restricciones y no puede ahora ser oída en queja contra ellas."

*Murphy et al.* v. *Worcester Consol. St. Ry. Co.*, 199 Mass. 279. 85 N. E. 507, 509.

Véanse también: *State* v. *Boston & Maine R. R. Co.*, 75 N. H. 327, 74 Atl. 542; *Electric Co.* v. *Dow*, 166 U. S. 489, 41 L. Ed. 1088; *Mayor, etc., of the City of New York* v. *Manhattan Ry. Co.*, 143 N. Y. 1, 37 N. E. 494, 501.

■ Aún cuando las corporaciones demandadas no hubiesen insertado en sus cartas constitutivas la limitación de los 500 acres, estarían igualmente obligadas por el estatuto, que ya regía en la fecha de su organización, por ser doctrina jurídica muy bien sentada la de que "las leyes bajo las cuales se organizan las corporaciones forman parte de sus cartas constitutivas y son obligatorias para ellas." 12 C. J. 770, sección 194; *Alabama & V. Ry. Co.* v. *Odeneal*, 73 Miss. 34, 19 So. 202; *Interstate Cons. St. Ry. Co.* v. *Massachusetts*, 207 U. S. 79, 52 L. Ed. 111; *Kankas City & C. R. R. Co.* v. *Stiles*, 242 U. S. 111, 117.

■ La facultad del Congreso Nacional para limitar la cantidad de tierras que una corporación agrícola puede poseer legalmente dentro de los límites territoriales de Puerto Rico es indiscutible. Está sostenida por copiosa jurisprudencia que nos limitaremos a citar, para no hacer innecesariamente

larga esta opinión. Véanse: *El Paso, etc., Railway Company* v. *Gutiérrez,* 215 U. S. 87; *National Bank* v. *County of Yankton,* 101 U. S. 129; *U. S.* v. *McMillan,* 165 U. S. 504, 511; *In Re McGraw Estate,* 111 N. Y. 66, confirmado en 136 U. S. 152; *Late Corporation of the Church, etc., (Mormon Church)* v. *U. S.,* 136 U. S. 1.

■ 4ª. Que existe indebida acumulación de partes demandadas.

Alega la Loíza Sugar Company que ella no es parte propia o necesaria en este procedimiento, porque aun en la hipótesis de que la Fajardo Sugar Company of Porto Rico poseyera cierto número de sus acciones, el remedio legal aplicable no sería el de disolución de ambas corporaciones, sino el disponer que la Fajardo se desprenda de las acciones que posee, si alguna ley así lo impusiere.

En la opinión dictada en junio 4 de 1936, en este mismo procedimiento (50 D.P.R. 163), declaramos que "dados los términos de la querella, la entidad central violadora de la ley resulta ser la querellada "The Fajardo Sugar Company of Porto Rico"; y que las otras dos querelladas, son, según los términos de la querella, "entidades subsidiarias suyas," usadas como agencias para controlar y poseer tierras en exceso de las permitidas por la ley y por sus propias cláusulas de incorporación.

Si es cierto—y debemos admitir que lo es para los fines de una excepción previa—que la Loíza Sugar Company era en octubre 6 de 1925 dueña de más de once mil acres de tierras, que adquirió en violación de la ley; que en esa fecha la Fajardo Sugar Company compró todas las acciones de "La Loíza" y adquirió el control y manejo de sus negocios; que en 10 de enero de 1935 la Loíza vendió a The Fajardo Sugar Growers' Association todas las tierras que poseía, con excepción de 598.72 acres, y que ese traspaso se verificó con el fin de ocultar la entidad verdaderamente dueña de dichas tierras; y por último, que The Fajardo Sugar Growers' Association es subsidiaria de The Fajardo Sugar Co., y que

la primera es controlada, financiada y dirigida por la segunda, y que ésta la ha utilizado además como medio o agencia para adquirir la propiedad o el control de 30,700 acres de terreno, en contravención del estatuto y de su carta constitutiva, tenemos que llegar a la conclusión inevitable de que todas y cada una de las entidades demandadas son partes propias y necesarias en este procedimiento. No sería posible llegar hasta el fondo de la alegada combinación ilegal y hacer respetar por medio de una sentencia de esta corte la política pública de descentralización de las tierras laborables de nuestra Isla, si no sometiéramos a nuestra jurisdicción a todas aquellas personas o entidades jurídicas señaladas en la querella como partes integrantes de la alegada combinación. La Loíza Sugar Company parece ser uno de los eslabones de la cadena que se dice forjó la Fajardo Sugar Co. para maniatar la ley. Es a nuestro juicio parte necesaria en este procedimiento. Debe desestimarse esta excepción.

Se alega a nombre de The Fajardo Sugar Growers' Association que ésta ha sido indebidamente incluída como parte en este procedimiento. El fundamento de esta excepción es que dicha asociación no es una corporación en el sentido y alcance que la palabra corporación tiene en la Resolución Conjunta de mayo 1º. de 1900.

En la querella se alega que de acuerdo con la ley y la jurisprudencia del Estado de New York la citada asociación es para todo propósito práctico una corporación; y además, que por sus cláusulas de asociación, por sus métodos de negociar, por sus contratos y por los términos de cierta escritura de fideicomiso, de la que es parte ''La Fajardo'', ''La Growers'' se ha investido a sí misma de los atributos de una corporación. En la relación que hicimos al principio de esta opinión hemos condensado las alegaciones de la querella tendientes a establecer el control financiero que ejerce ''La Fajardo'' sobre ''La Growers'', sobre sus acciones, sobre sus dividendos, frutos y beneficios, etc.

La resolución definitiva de la cuestión legal de si ''La

Growers'', es o no es una corporación, dentro del alcance y significado del estatuto, depende necesariamente de la interpretación que demos a sus cláusulas de asociación, de la que a sus leyes han dado las cortes del Estado de New York y de la suficiencia de la prueba que pueda aducir la parte querellante para establecer los hechos por ella alegados. La excepción previa admite necesariamente la veracidad de los hechos alegados. Y éstos son a nuestro juicio suficientes para que resolvamos que The Fajardo Sugar Growers' Association es parte necesaria en este procedimiento. Y no estaría de más consignar aquí que la consideraríamos parte necesaria, aun cuando no fuese una corporación, si de las alegaciones y de la prueba resultase que dicha asociación es subsidiaria de The Fajardo Sugar Company of Porto Rico y utilizada por ésta como instrumento, medio o agencia para violar la ley y evitar sus sanciones. La interdependencia de las tres entidades querelladas entre sí y la relación íntima que existe entre los hechos imputados a todas y a cada una de ellas— hechos que constituyen las transacción ilegal que es materia de la causa de acción—son por sí solas suficientes para que resolvamos que las tres entidades querelladas son partes necesarias y declaremos sin lugar la excepción.

■ 5ª. Indebida acumulación de acciones.

Hemos estudiado cuidadosamente la muy hábil argumentación de los letrados de The Fajardo Sugar Company y de la Fajardo Sugar Growers' Association para convencernos de que en la querella se han acumulado indebidamente ocho distintas causas de acción. No lo han logrado.

La querella denuncia la concepción y la realización de un plan general, preconcebido y llevado a efecto con el propósito de violar le ley. Como parte principal y como principal beneficiaria del plan se señala a The Fajardo Sugar Company of Porto Rico. Como partes secundarias, como medios o instrumentos de que ésta se sirve para el desarrollo del plan, figuran las otras dos querelladas. El fin único del plan

es el de hacer posible que, en contravención de la ley y de la política pública enunciada por el Congreso y por El Pueblo de Puerto Rico, The Fajardo Sugar Company of Porto Rico posea o controle 23,800 cuerdas de terrenos propios para la siembra de cañas de azúcar.

Los actos que se imputan a cada una de las tres demandadas, como *overt acts* realizados en obediencia a una dirección central y a un plan común, no pueden ser considerados como causas de acción distintas e individuales que deban ejercitarse separadamente. Todos esos actos están tan íntimamente entrelazados que en realidad constituyen una sola transacción. Uno solo es también el fin que se persigue mediante la acción que se ejercita—disolver y desmembrar una combinación ilegal, mediante la disolución de sus partes integrantes, y desvincular el latifundio por ella creado.

"Por la naturaleza misma de las cosas, para que exista una indebida acumulación debe haber dos o más causas de acción alegadas. Una excepción previa por indebida acumulación de causas de acción no es por tanto sostenible simplemente porque en la demanda se alega una sola causa de acción bajo dos o más aspectos (*counts*); porque el contrato objeto de la acción especifica varias y distintas partidas o pagos por hacer; porque se aleguen varias clases de perjuicios; porque los actos realizados en el desarrollo de una conspiración cubren distintas transacciones; o porque se pida más de una clase de remedios." 1 Bancroft's Code Pleading, págs. 338–339.

Véanse también: *Lucero et al.* v. *Vilá,* 17 D.P.R. 152; *Battle* v. *Torruella,* 39 D.P.R. 205; *Serra, Garabís & Co., Inc.,* v. *Municipio,* 42 D.P.R. 468; *Stubbe Bros., Inc.* v. *Díaz,* 43 D.P.R. 79; *E. Solé & Co.* v. *Rocafort,* 45 D.P.R. 31; *Cochran, Síndico* v. *Fernández,* 47 D.P.R. 704 y *Doudell* v. *Shoo,* 20 Cal. App. 424.

No existe, a nuestro juicio, la alegada indebida acumulación. La excepción debe ser desestimada.

Haremos constar, para terminar, que la querella enmendada es perfectamente inteligible, libre de ambigüedades y que su lectura no ha dejado en nuestro ánimo duda alguna

en cuanto a la causa de acción que se ejercita ni en cuanto a la suficiencia de los hechos alegados para sostenerla. Los argumentos aducidos en contrario no son convincentes.

*Por las razones expuestas deben declararse sin lugar todas y cada una de las excepciones previas formuladas. Y se concede a cada una de las demandadas un término de treinta días para contestar la querella enmendada.*

El Juez Asociado Señor Córdova Dávila no intervino.

El Juez Asociado Señor Wolf está conforme con el resultado.