Roselló Hermanos Incorporada, demandante y apelante, *v.* Jesús Figueroa, demandado y apelado. La Misma, demandante y apelante, *v.* José Aguilera, demandado y apelado. La Misma, demandante y apelante, *v.* Alejandro Torres, demandado y apelado.

Números 10764, 10765, 10766.

*Sometido:* 7 de enero de 1953. *Resuelto:* 2 de marzo de 1953.

*Víctor Rivera Colón,* abogado de la apelante; *Rafael Hernández Matos,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

Tres recursos de apelación se han sometido conjuntamente ante este Tribunal, ya que envuelven cuestiones comunes. La demandante–apelante presentó, en la Sección de Ponce del anterior Tribunal de Distrito de Puerto Rico, tres demandas de "Desahucio por Detentación" contra Jesús Figueroa, José Aguilera y Alejandro Torres. De las demandas surge que la demandante es dueña de dos casas enclavadas en solares de su propiedad y localizadas en la Calle Isabel de la ciudad de Ponce; que la demandante adquirió dichos inmuebles por compra el 20 de abril de 1951, y que en la fecha de la adquisición cada uno de los tres demandados ocupaba parte de los inmuebles como inquilino del anterior dueño y "que cuando la parte demandante adquirió dichos inmuebles le notificó por escrito y de modo fehaciente a cada uno de los demandados con fecha 23 de mayo de 1951, para que procediera a desalojar el local que ocupaba, toda vez que no renovaba ni aceptaba renovar el contrato de arrendamiento que tenía dicho demandado con el dueño anterior y era el propósito, y lo es aún, de la parte demandante retirar el local del mercado de alquileres de buena fe y para dedicarlo al uso propio y para su negocio." Se solicitó el desahucio de los demandados. Estos últimos radicaron escritos intitulados "Excepciones Previas y Contestación", en que se alegaba que la demanda "no aduce hechos suficientes para determinar una causa de acción", y que el tribunal carecía de jurisdicción. En la contestación los demandados negaron ciertos hechos y alegaron afirmativamente otros.

Posteriormente, y sin haberse celebrado la vista del caso en sus méritos, el tribunal a quo dictó una resolución decla-

rando con lugar las "excepciones previas" por insuficiencia legal de los hechos expuestos en las demandas y decretando que el tribunal carecía de jurisdicción en los tres casos. La parte demandante solicitó que se dictasen sentencias en su contra, alegando que las demandas no eran enmendables, y el tribunal inferior así lo hizo, dictando sentencias declarando sin lugar las demandas y condenando a la demandante a pagar $100 en cada caso, en concepto de honorarios de abogado. Contra esas sentencias ha apelado ante nos la demandante y como único error señalado alega que el tribunal inferior erró al haber declarado con lugar las excepciones previas de los demandados y al haber declarado sin lugar las demandas.

El tribunal sentenciador resolvió que las demandas eran insuficientes porque en ellas no se alegaba el cumplimiento previo de ciertas "condiciones precedentes" a una acción de desahucio, según esas condiciones han sido señaladas y establecidas en el artículo 12-A de la Ley núm. 464 de 25 de abril de 1946 ((1) pág. 1327), (Ley de Alquileres Razonables), según dicho artículo fué enmendado por la Ley 201 de 14 de mayo de 1948 ((1) pág. 575). También resolvió el tribunal inferior que de las demandas surgía que había tenido lugar la tácita reconducción, con todos sus efectos, en cuanto a los meses de abril y de mayo de 1951, ya que no obstante haber adquirido la demandante los inmuebles el 20 de abril de 1951, ella no requirió el desalojo de los locales hasta el 23 de mayo de 1951. En virtud de tales fundamentos, el tribunal inferior llegó a la conclusión de que, en vista de que se mantenía una relación arrendaticia entre las partes, los demandados no eran detentadores, faltando, para darle autoridad sobre el caso, la requerida alegación jurisdiccional sobre la cuantía de los cánones de arrendamiento.

Los artículos 12, 12-A-7 y 15 de la citada Ley de Alquileres Razonables (Ley núm. 201 de 14 de mayo de 1948) disponen, en lo pertinente, lo siguiente:

"Artículo 12.—(Según enmendado por la Ley 201 de 14 de mayo de 1948.)    Sea cual fuere la fecha de su edificación u ocupación y tanto en las viviendas como en los locales de negocio, aunque cambie el dueño o el titular arrendador, llegado el día del vencimiento pactado en el contrato de arrendamiento, éste se prorrogará obligatoriamente para el arrendador y potestativamente para el inquilino o arrendatario, sin alteración de ninguna de sus cláusulas, todas las cuales se reputarán vigentes.    Lo anterior es aplicable tanto a contratos escritos como a convenios orales y la prórroga se entenderá por los plazos que fija el Artículo 1471 del Código Civil, pero nunca por un período mayor que la duración de la emergencia declarada en esta Ley.    Dicha prórroga es también aplicable a solares dados en arriendo y en los cuales existen edificaciones pertenecientes a dueño distinto al del solar.

"Artículo 12-A.—(Según enmendado por la Ley 201 de 14 de mayo de 1948.)    Como excepciones a lo dispuesto en el artículo precedente, el arrendador podrá negar la prórroga del contrato de arrendamiento y en su consecuencia promover la acción de desahucio solamente en los casos siguientes:

".        .        .        .  .        .        .        .        .

".        .        .        .        .        .        .        .

"7. Por necesitar para sí de buena fe, el local de comercio o negocio.    Para que prospere esta excepción será necesario que concurran las condiciones fijadas a continuación.

"*a.* Que el arrendador haya adquirido la propiedad con anterioridad al 17 de julio de 1947, (sic) fecha de vigencia de la Ley de Alquileres Razonables en cuanto a locales comerciales y de negocio, y que el local hubiera estado arrendado por plazo fijo y ya hubiera vencido el término del arrendamiento.

"*b.* Que el arrendador no tenga establecido en la misma localidad, en edificio propio o ajeno, un negocio de naturaleza igual o parecida al que tenga el inquilino.

"*c.* Que el arrendador interese el local para ocuparlo personalmente con negocio de su exclusiva pertenencia.

"*d.* El mero hecho de que el arrendador desee o necesite la ampliación de su negocio no será causa bastante para justificar la necesidad en que se halla de ocupar el local que hubiere dado en arriendo.

"*e.* El arrendador deberá notificar por escrito en forma fehaciente al inquilino afectado la necesidad en que se halla de ocupar para sí el local, y le requerirá para que desaloje el mismo,

todo ello con seis meses de antelación, por lo menos, a la fecha en que el inquilino reciba la notificación de desalojo.

"Artículo 15.—(Según enmendado por la Ley 51 de 10 de junio de 1948.) Toda persona que adquiera una propiedad arrendada quedará sujeta a los términos de esta Ley, y no podrá reclamar otros derechos que aquéllos que en la misma se establecen en favor del propietario original.

"En todo caso de venta, cesión o enajenación de propiedad arrendada, el contrato de arrendamiento que el inquilino tuviera con el dueño anterior, se entenderá subsistente y sujeto a la prórroga que especifica el artículo 12 de la Ley.

"Tampoco podrá la persona que adquiera una propiedad arrendada promover contra el inquilino acción alguna de desahucio, desahucio por detentación o para recobrar la posesión de dicha propiedad a no ser por las causas y bajo los términos y condiciones que se expresan en los artículos 12-A a 12-J de esta Ley."

En las demandas se alega que el propósito de la demandante era, y aún lo es, de buena fe, el de retirar los locales del mercado de alquileres, para dedicarlos al uso propio y para su negocio. El tribunal sentenciador resolvió que tal alegación no era suficiente para justificar la terminación de los arriendos, ya que debía alegarse el cumplimiento de otras condiciones y requisitos, "necesarios y precedentes", señalados en el citado artículo 12-A-7. Específicamente, el tribunal a quo basó su resolución en el criterio de que las demandas eran insuficientes porque de ellas surgía que la propiedad se había adquirido con posterioridad al 17 de julio de 1946 [1] y porque en ellas no se alegaba que la propietaria no tuviese establecido en la misma localidad, en edificio propio o ajeno, un negocio de naturaleza igual o parecida al que tuviesen los inquilinos, ni que en dichos locales la demandante establecería un negocio de su exclusiva pertenencia, ni que realmente ella tuviese la necesidad de ocuparlos para sí.

En *Rivera* v. *R. Cobián Chinea & Co.*, 181 F.2d 974, de fecha 19 de mayo de 1950, la Corte de Apelaciones de los Es-

---

[1] El artículo 12-A-7 (*a*) dice 1947 pero debe ser 1946. Véase *Rivera* v. *Cobián Chinea*, infra, pág. 975, nota 2, en donde se tomó conocimiento judicial del error.

tados Unidos para el Primer Circuito, resolvió que el artículo 12 de la Ley de Alquileres Razonables de 1946 (núm. 464 de 25 de abril de 1946) era inconstitucional y nulo en tanto y hasta el punto de que prohibiese a un arrendador el tramitar una acción de desahucio contra un arrendatario cuando el arrendador o dueño desea de buena fe recuperar el local arrendado con el propósito de retirarlo del mercado de alquileres y dedicarlo a su propio uso, en aquellos casos en que haya expirado el término del arrendamiento contractual. Se establece, por lo tanto, que el propietario no puede ser privado de su derecho constitucional a desahuciar a un inquilino, bajo las circunstancias ya indicadas, o sea, cuando el propietario cumpla con lo siguiente: (1) Que tenga el propósito, de buena fe, de recuperar la propiedad para su propio uso, retirándola del mercado de alquileres, y (2) que haya expirado el término del arrendamiento contractual.

Es cierto que el caso de autos no está gobernado por las disposiciones del artículo 12 de la ley núm. 464 de 1946, que estaba directamente envuelta en el caso de *Rivera* v. *Cobián Chinea*, supra, y debe resolverse al amparo del ya transcrito artículo 12-A-7, que forma parte de la Ley núm. 201 de 14 de mayo de 1948. Sin embargo, las condiciones a la acción de desahucio fijadas en el artículo 12-A-7, y que fueron señaladas por el tribunal a quo como requisitos necesarios y previos a la acción de desahucio, constituyen limitaciones y restricciones adicionales al ejercicio del derecho constitucional del propietario a desahuciar al inquilino cuando el propósito *bona fide* del dueño sea, como hemos visto, el de retirar la propiedad del mercado de alquileres para dedicarlo a su propio uso, cuando haya vencido el término del arrendamiento contractual. Por lo tanto, tales condiciones, limitaciones y restricciones adicionales deben ser consideradas como inconstitucionales e *inválidas*, en cuanto a su aplicación a un caso como el de autos, en que se alega que la demandante tiene el propósito de retirar los locales del mercado de alquileres para dedicarlos a su propio uso. Los citados artículos 12 y 12-A-7 es-

tablecen un sistema de prórroga obligatoria para el arrendador, pudiendo él negar la prórroga del vínculo arrendaticio al cumplir con determinadas condiciones enumeradas en el estatuto. Como hemos visto, en el caso de *Rivera* v. *Cobián Chinea*, supra, se resuelve que es inconstitucional un sistema de prórroga obligatoria que prive al dueño de su derecho a recuperar, de buena fe, la propiedad para su propio uso, retirándola del mercado de alquileres, al terminar el contrato de arrendamiento. Las condiciones previas al ejercicio de tal derecho exigidas por el artículo 12-A-7 y por el tribunal a quo coartan y restringen ese derecho más allá de los límites autorizados en la opinión de la Corte de Apelaciones para el Primer Circuito. Nos explicaremos.

El artículo citado establece como condición al desahucio el que el arrendador haya adquirido la propiedad con anterioridad a la vigencia de la Ley de Alquileres Razonables, en cuanto a locales comerciales y de negocio. La efectividad del derecho constitucional del arrendador de recuperar la propiedad bajo las circunstancias ya enumeradas no debe depender de la fecha en que se adquirió la propiedad. El derecho surge al adquirirse la propiedad, independientemente de la fecha de adquisición.

El inciso (*b*) del artículo 12-A-7, exige, como condición al desahucio, el que el arrendador demuestre que él no tiene establecido en la localidad, en edificio propio o ajeno, un negocio de naturaleza igual o parecida al que tenga el inquilino. Ahora bien, el derecho constitucional del propietario a recuperar una propiedad específica, en la situación envuelta en el caso de *Rivera* v. *Cobián Chinea*, que es la misma prevaleciente en el de autos, es independiente de, y no puede estar condicionado en el hecho de que el arrendador tenga o deje de tener otra propiedad distinta u otro negocio de clase alguna. La existencia de otro negocio no le imprime validez constitucional a una prohibición al ejercicio del derecho de recobrar el inmueble para su propio uso y de retirar la propiedad del mercado de alquileres. Tampoco debe ser condición previa al

ejercicio de tal derecho el que el arrendador demuestre que interesa el local para ocuparlo personalmente con negocio de su propia pertenencia. Bajo la doctrina establecida en el citado caso de *Rivera* v. *Cobián Chinea*, supra, basta con que el arrendador interese, de buena fe, dedicar la propiedad a su propio uso, independientemente de la naturaleza de ese uso.

Naturalmente, es válido el requisito señalado en el inciso *(e)* del art. 12–A–7, en cuanto al hecho de que el arrendador deberá notificar por escrito en forma fehaciente al inquilino afectado, en cuanto a su propósito de ocupar la propiedad a los fines indicados en el caso de *Rivera* v. *Cobián Chinea*, y de formular el correspondiente requerimiento de desalojo, todo ello con seis meses de antelación, por lo menos, a la fecha en que el inquilino reciba la notificación de desalojo. Se trata de un trámite procesal que conlleva un nuevo período de espera que no afecta el derecho al desahucio. En las demandas radicadas en el caso de autos se alega el cumplimiento de tal requisito.

Llegamos, por lo tanto, a la conclusión de que es legalmente suficiente la alegación contenida en las demandas al efecto de que la parte demandante tiene el propósito de desalojar a los inquilinos para retirar los locales del mercado de alquileres y dedicarlos a su propio uso, no siendo necesario el que la demandante hubiese alegado el cumplimiento de las demás condiciones ya discutidas. Debemos observar, sin embargo, que en *Rivera* v. *Cobián Chinea*, supra, se determina que el derecho del arrendador al desahucio está condicionado, además, en la demostración de que el término del contrato de arrendamiento ha expirado. En las demandas no se expone cuál era el término de los contratos de arrendamiento anteriores a la adquisición. Pero sí se alega que la demandante compró los inmuebles el 20 de abril de 1951, cuando los demandados eran inquilinos. La compra por la demandante, y la posterior notificación y requerimiento a los demandados, tuvieron el efecto de dar por terminados los pre-

vios contratos de arrendamiento con los inquilinos, en la situación de hechos envuelta en este caso. *Torres* v. *Biaggi*, 72 D.P.R. 869, 873.

■ Los arts. 70 y 76 de la Ley de Arrendamientos Urbanos de España, que tenían su antecedente en el artículo 1º del Decreto de 29 de diciembre de 1931, de España, son casi exactamente idénticos al artículo 12 de nuestra Ley de Alquileres Razonables. Tales artículos disponen lo siguiente:

"Art. 70.—Sea cual fuere la fecha de su edificación u ocupación, y tanto en las viviendas como en los locales de negocio, aunque cambie el dueño o el titular arrendador, llegado el día del vencimiento pactado en el contrato de arrendamiento, éste se prorrogará obligatoriamente para el arrendador y potestativamente para el inquilino o arrendatario, sin alteración de ninguna de sus cláusulas, todas las cuales se reputarán vigentes.

"Art. 76.—Transcurrido el plazo por el que hubiere sido pactado el arrendamiento de vivienda o local de negocio, podrá el arrendador negar la prórroga del contrato por alguna de las causas siguientes:

"Primera. Por necesitar para sí la vivienda o local de negocio, o para que la ocupen sus descendientes o ascendientes consanguíneos.

"Segunda. Por proyectar el derribo de la finca para edificar otra que cuente, cuando menos, con un tercio más de las viviendas que en ella hubiere, y una, como mínimo, si no las hubiere en el edificio que se pretende derribar."

La sentencia del Tribunal Supremo de España de 9 de enero de 1948 establece que el régimen de prórroga obligagatoria para el arrendador, determinada en tales artículos, es radicalmente incompatible con el artículo 1571 del Código Civil de España (1461 del nuestro), que faculta al comprador de una finca determinada para dar por terminado el arriendo antes del plazo marcado en el contrato, "porque la prórroga sólo puede tener lugar cuando ha expirado el término contractual, y sería totalmente contraria al propósito del legislador de dar estabilidad a los contratos en favor de los inquilinos que antes de llegar dicho término, el contrato, que por

ministerio de ley es prorrogable de modo indefinido, pudiera darse por concluso por el nuevo adquirente." 10 Manresa 866, 5a. ed.

La decisión del Tribunal Supremo de España se amparó en una situación legal de prórroga obligatoria para los arrendadores, prevaleciente en ese país, en virtud de la cual los contratos se consideran prorrogados indefinidamente, por ministerio de ley. La facultad de terminar el arriendo en virtud de una compra queda subordinada, en España, a una ley posterior que establece la obligatoriedad en la continuación del contrato. Sin embargo, los hechos específicos de este caso exigen la aplicación de la doctrina constitucional sentada en *Rivera* v. *Cobián Chinea*, supra, al efecto de que la prórroga del arriendo no es obligatoria para el propietario bajo las circunstancias ya indicadas, que son las que prevalecen en el caso de autos. El concepto de prórroga obligatoria por ministerio de ley, que constituye el *ratio-decidendi* en el caso de España, no es de aplicación al de autos. Es además digno de ser mencionado el hecho de que, en el caso de España, el contrato de arrendamiento tenía una duración de veintiséis años, que expirarían en el 1958, mientras que en el caso de autos el contrato es de mes a mes.

En las demandas ante nos no hay alegación alguna, de ser necesaria, en cuanto a la duración del contrato. Sin embargo, en las contestaciones de los demandados, formuladas conjuntamente y en los mismos documentos en que se presentan las "excepciones previas", los demandados exponen que ellos han ocupado el local mediante contratos orales de arrendamiento, de mes a mes, con pagos mensuales. Una alegación o demanda defectuosa por razón de la omisión de algún hecho esencial puede ser suplida por la parte contraria mediante la alegación correspondiente en la contestación, surtiéndose el mismo efecto que se hubiese producido de haber sido insertada en la propia demanda. *Jiménez Vda. Cobián* v. *Ramos*, 51 D.P.R. 387, 390; *Andréu, Aguilar & Co.* v.

*Rodríguez*, 36 D.P.R. 626; 71 C.J.S. 1169; *Daggett* v. *Gray*, 110 Cal. 169; *Vaughn* v. *Jonas*, 31 Cal.2d 586. Las admisiones contenidas en una contestación subsanan cualquier defecto de que pudiera adolecer la demanda. *P. R. Benevolent Society* v. *Mun. de Ponce et al*, 28 D.P.R. 824. Específicamente en una acción de desahucio, este Tribunal ha resuelto que es improcedente la "excepción previa general por falta de hechos determinantes de causa de acción" interpuesta contra una demanda de desahucio, cuando cualesquiera defectos de que adolezca una demanda, quedan subsanados por la contestación si ésta suple las deficiencias de la alegación del demandante. *Cabassa* v. *Reyes*, 27 D.P.R. 360.

▆ Un contrato de arrendamiento que se admite no tiene término fijo de duración y el canon se paga a razón de un tanto mensual, se entiende hecho por meses, pudiendo el arrendador darlo por terminado al finalizar cualquier mes. *Pueblo* v. *Carrasquillo*, 58 D.P.R. 176; *Puig* v. *Soto*, 18 D.P.R. 132. Precisamente en el caso de *Rivera* v. *Cobián Chinea*, supra, el contrato era sin término fijo, pagándose un canon mensual. Por lo tanto, tal caso es directamente aplicable al de autos.

▆ En las demandas se alega que la demandante adquirió los inmuebles el 20 de abril de 1951, y el día 23 de mayo de 1951 notificó y requirió a los demandados que los desalojaran. En su resolución el tribunal sentenciador determinó erróneamente que al dejar de hacer tal notificación dentro de los primeros quince días de mayo, había tenido lugar la tácita reconducción, "por lo menos por todo el mes de mayo". Las demandas fueron radicadas el 14 de febrero de 1952. Como ya hemos visto, la demandante tenía derecho a negar la prórroga de los contratos y a recuperar la propiedad, y, por consiguiente, a requerir su desalojo. La demandante ejerció ese derecho y se vió precisada a cumplir con la ley vigente al esperar seis o más meses antes de radicar sus demandas de desahucio. Los demandados eran detentadores, mera-

mente pagando por el uso de su local, ya que, una vez adquirida la propiedad por un nuevo dueño y negada la prórroga, no pudo haber contrato expreso o implícito entre las partes, no pudiendo haber, por lo tanto, tácita reconducción. *Torres* v. *Biaggi*, supra, a la página 875.[2] La tácita reconducción se basa en el consentimiento tácito de las partes, que presume la ley. Cf. *León Parra* v. *Gerardino*, 58 D.P.R. 489. Al expresar la demandante su deseo y propósito de recuperar los locales y negar la prórroga de los contratos, tal expresión de voluntad excluye cualquier posible inferencia de consentimiento implícito. Cualquier alegada presunción de consentimiento de la demandante fué previamente rebatida por la propia demandante al requerir el desalojo de los locales de acuerdo con la ley. Siendo detentadores los demandados, tenía el tribunal a quo jurisdicción sobre la acción. Erró además el tribunal sentenciador al resolver que las demandas eran legalmente insuficientes.

*Deben revocarse las sentencias apeladas y devolverse el caso al tribunal a quo para que se sigan los procedimientos posteriores que no sean incompatibles con esta opinión.*[3]

---

(2) En España se ha resuelto que bajo el sistema de prórroga obligatoria no puede haber tácita reconducción. Sentencias de 18 de septiembre de 1946 y de 7 de febrero de 1946. En el caso de autos la prórroga no es obligatoria para el arrendador. Pero no puede haber tácita reconducción, por los fundamentos señalados en la opinión.

(3) Naturalmente, debe probarse en el tribunal a quo que realmente la demandante tiene el propósito de buena fe de recuperar los locales arrendados para retirarlos del mercado de alquileres y dedicarlos a su propio uso.