CARMEN VIOLETA GONZÁLEZ, demandante y recurrente, *v.* RAMÓN GARCÍA, demandante y recurrido.

*Número:* AC-88-179          *Resuelto:* 10 de mayo de 1994

*Janet Castro*, abogada de la recurrente; *José R. Durand Villar*, abogado de la recurrida.

PER CURIAM: La Sra. Carmen Violeta González nos solicita que revoquemos la sentencia dictada por el Tribunal Superior que desestima la demanda de desahucio que presentó contra la Sra. Ramona García con el propósito de retirar la propiedad del mercado de alquileres. Sostiene que el foro de instancia erró al dictar sentencia sin concederle una vista para probar su buena fe. Confirmamos el dictamen recurrido.

En 1977 Carmen González arrendó un inmueble de su propiedad a Ramona García para uso residencial. Este arrendamiento está sujeto a la Ley de Alquileres Razonables, Ley Núm. 464 de 25 de abril de 1946, según enmendada, 17 L.P.R.A. sec. 181 *et seq.* El 1ro de octubre de 1987 la arrendadora le notificó a la arrendataria su intención de retirar el inmueble del mercado de alquiler de viviendas.

Pasados siete (7) meses de la notificación, el 19 de mayo de 1988 la arrendadora presentó una demanda ante el Tribunal Superior, Sala de San Juan, en la que solicitó el desahucio de la arrendataria. Alegó que deseaba retirar el inmueble del "mercado de alquileres ya que el rendimiento del canon de arrendamiento no justifica la inversión para mantenerl[o] en el mercado de alquileres. *Raluán Corp. v. Feliciano*, 111 DPR 598 (1981)". Apelación, Apéndice, pág. A-1.

Las partes sometieron el caso a base de una estipulación de hechos y sendos memorandos de derecho.([1]) Sobre los

---

([1]) A pesar de que la estipulación presentada nada disponía sobre la intención de la arrendadora de vender el inmueble, la arrendataria sometió un memorando de autoridades sobre si la Ley de Alquileres Razonables permite a un arrendador desalojar a un arrendatario para vender el inmueble libre del contrato de arrendamiento. Según dicho memorando, la arrendadora admitió en una vista ante el tribunal que su intención era vender el inmueble.

En su réplica, la arrendadora alegó que los cánones recibidos no eran suficientes para cubrir los gastos de mantenimiento y las contribuciones sobre el inmueble, por lo que inició varios intentos para venderlo. Alegó, además, que su salud y su edad no le permitían desempeñar eficazmente sus labores como arrendadora. La estipulación de hechos nada dispuso sobre estas alegaciones.

méritos de la acción, la arrendadora reconoció que la Ley de Alquileres Razonables no autoriza el desahucio por razón de que los cánones sean insuficientes para sufragar gastos de contribuciones. Sostuvo, sin embargo, que el canon fijado por el Departamento de Asuntos del Consumidor (D.A.Co.) es irrazonable y opresivo, por lo que no permitir el desahucio equivaldría a una privación inconstitucional de su derecho de propiedad.

El tribunal de instancia dictó una sentencia mediante la cual desestimó la demanda por entender: (1) que la arrendadora deseaba retirar el inmueble del mercado por razones económicas para luego ponerlo a la venta; (2) que la ley no permite el desahucio por estas razones; (3) que nuestra jurisprudencia constitucional sugiere que las alegadas razones económicas podrían constituir una causal de desahucio; (4) que, antes de considerar la procedencia de esta causal, es necesario determinar si la arrendadora obra de buena fe, y (5) que las estipulaciones de hechos no proveen elementos suficientes para hacer esta determinación.

La arrendadora presentó una moción de reconsideración en la que solicitó una vista para presentar prueba sobre las alegadas razones económicas para el desahucio y su buena fe. Luego de una comparecencia de la arrendataria, el Tribunal Superior declaró sin lugar la moción.

Inconforme, la arrendadora presentó un recurso de apelación civil en el que señaló como único error que el tribunal a quo no celebró la vista solicitada. Aceptamos el recurso como una solicitud de revisión y expedimos el auto.

## II

Partimos de la premisa de que el Art. 12-A(5) de la Ley de Alquileres Razonables, 17 L.P.R.A. sec. 193(5), no autoriza el desahucio de un arrendatario por las razones que alega la arrendadora, a saber, que los cánones no son suficientes para cubrir los gastos de conservación del in-

mueble y las contribuciones. De acuerdo con dicha ley, procedería desestimar la demanda.

Nuestros precedentes han intimado, sin embargo, que un canon insuficiente podría contravenir tanto la Constitución de Estados Unidos de América como la del Estado Libre Asociado de Puerto Rico. *Raluán Corp. v. Feliciano*, 111 D.P.R. 598, 600 (1981); *Balbás Peña v. ASERCO*, 104 D.P.R. 815, 823–824 (1976).

■   Ahora bien, para que los tribunales puedan considerar una impugnación constitucional de esta índole es preciso que la parte interesada presente prueba sobre la insuficiencia del canon particular en cuestión. La parte podría probar (1) que el canon es insuficiente para pagar los gastos e impuestos, por lo que debería ser aumentado, o (2) que la insuficiencia es tal que no sería superada por un aumento dentro de los límites de la ley, por lo que procedería remover el inmueble de su régimen.

La única cuestión ante nos es si el tribunal a quo incidió al no celebrar la vista que le solicitó la arrendadora en su moción de reconsideración para desfilar prueba sobre su alegación de que el canon de arrendamiento no justifica la inversión para mantener el inmueble en el mercado de alquileres.

De ordinario, una vista es necesaria para que la arrendadora pueda probar los hechos que sustentan su alegada causal de desahucio. En el caso de autos, sin embargo, las partes no objetaron someter el caso por una estipulación de hechos y sendos memorandos de derecho. Dicha estipulación no incluyó hecho alguno referente a la suficiencia constitucional del canon de arrendamiento. A nuestro juicio, por lo tanto, el magistrado obró conforme a derecho al abstenerse de atender los planteamientos constitucionales y resolver meramente que el Art. 12-A(5) de la Ley de Alquileres Razonables, *supra*, no autoriza el desahucio pretendido.

La arrendadora no presentó ni ofreció prueba acerca de

sus gastos de mantenimiento o las contribuciones sobre el inmueble. Tampoco demostró haber solicitado una revisión del canon ante la agencia pertinente de acuerdo con el Art. 6 de la Ley de Alquileres Razonables, 17 L.P.R.A. sec. 186. No es hasta después de notificada la sentencia que la arrendadora reconoce su omisión y solicita, mediante moción de reconsideración, la celebración de una vista para desfilar prueba. En el sano ejercicio de su discreción, el magistrado la declaró sin lugar.

La arrendadora ahora solicita la revocación de la sentencia para que le concedamos la vista que pidiera en su moción de reconsideración. Como la arrendadora ya tuvo su oportunidad de presentar la prueba pertinente y no lo hizo, el foro de instancia actuó correctamente al desestimar la acción incoada. A nuestro juicio, nada más es necesario para disponer de este caso. Procede que se expida el auto y se confirme su dictamen.

*Se dictará la sentencia correspondiente.*

El Juez Asociado Señor Fuster Berlingeri concurrió con una opinión escrita. La Juez Asociada Señora Naveira de Rodón disintió con una opinión escrita, a la cual se unió el Juez Asociado Señor Rebollo López.

— O —

Opinión concurrente emitida por el Juez Asociado Señor Fuster Berlingeri.

Debido a la gran importancia social que tiene la protección de los derechos de los inquilinos bajo el vigente régimen de la Ley de Alquileres Razonables, considero menester expresar las razones por las cuales concurro con el resultado al que llega la mayoría del Tribunal en este caso. Soy de los que estiman que la continuada vigencia de la Ley de Alquileres Razonables se justifica por la gran necesidad, que todavía existe en el país, de vivienda de costo

moderado para las miles de personas de recursos limitados que no pueden comprar residencias propias. En defensa de los derechos e intereses de estas personas, debe quedar claro que la Ley de Alquileres Razonables aún los ampara.

En el caso de marras, la dueña de la propiedad en cuestión *no* tenía derecho a retirarla del mercado de alquileres *si no era para darle uso residencial personalmente.* Es por esta razón que no procedía el desahucio solicitado y por la cual debemos confirmar el dictamen recurrido.

El Art. 12-A(5) de la Ley de Alquileres Razonables, 17 L.P.R.A. sec. 193(5), clara y expresamente permite que un propietario retire una vivienda del mercado de alquileres sólo si es *"para uso personal y ocupación inmediata* como sitio de *residencia".* (Énfasis suplido.) En numerosas ocasiones hemos sostenido el mandato de ley de que el derecho a retirar la vivienda del mercado está sujeta a la condición esencial de que dicha acción responda "[a]l único propósito ... de obtener el local arrendado para su uso propio ...". *Valentín v. Figueroa,* 79 D.P.R. 444, 452 (1956). Véanse: *Rodríguez Rodríguez v. Tribunal Superior,* 100 D.P.R. 421 (1972); *Colón Vélez v. Lebrón,* 97 D.P.R. 154 (1969). En *Méndez v. Tribl. de Distrito,* 72 D.P.R. 544 (1951), incluso resolvimos que no procedía el desahucio ni siquiera cuando el dueño de la vivienda deseaba retirarla del mercado de alquileres para que el local fuese ocupado por un hijo del dueño.

La aludida disposición legal, según la hemos interpretado, responde al fundamental interés público de aliviar la *escasez* de locales de vivienda de costo moderado. *Colón Vélez v. Lebrón,* supra. Encarna la política social que busca proveer locales de vivienda a familias de escasos recursos a base de alquileres razonables. *Pérez Mercado v. Peñagarícano, Admor.,* 93 D.P.R. 738 (1966). Es precisamente en consecución de esta fundamental finalidad que se restringe el derecho del arrendador a deshauciar a su inquilino, li-

mitándolo a retirar la vivienda del mercado de alquileres únicamente cuando el arrendador la necesita para uso residencial propio. Si el arrendador estuviese libre para retirar la vivienda del mercado *por cualquier razón*, aunque no vaya a darle uso personal, la médula del entramado sobre alquileres razonables desaparecería. Ello tendría un efecto devastador sobre el régimen de alquileres razonables que hasta hoy la Asamblea Legislativa ha mantenido en pie como parte de la legislación social fundamental del país, cuya constitucionalidad hemos sostenido reiteradamente.

No tenía, pues, la recurrente derecho al desahucio y, por ende, tampoco tenía derecho a la vista solicitada para determinar buena fe. Procedía desestimar la demanda de desahucio como lo hizo el foro de instancia.

## – O –

Opinión disidente emitida por la Juez Asociada Señora Naveira de Rodón, a la cual se une el Juez Asociado Señor Rebollo López.

### I

En el caso de autos se plantea, como único error, el siguiente:

Erró el Honorable Tribunal de Instancia al no permitir a la demandante retirar del mercado de alquileres cierto inmueble de su propiedad, sin concederle vista para determinarse su buena fe.

El análisis de este error requiere que hagamos un recuento de la trayectoria procesal. El 19 de mayo de 1988 la Sra. Carmen Violeta González presentó una demanda de desahucio contra la Sra. Ramona García. Alegó, en esencia, que era dueña de una propiedad inmueble sita en la Calle Buenaventura de Santurce; que desde el 1979 la tenía

arrendada a la demandada por ciento veinticinco dólares ($125) mensuales; que interesaba retirar dicha propiedad del mercado de alquileres "ya que el rendimiento del canon de arrendamiento no justifica la inversión para mantenerla en el mercado de alquileres; que había notificado a la demandada su intención de retirar la propiedad del mercado de alquileres y solicitado el desalojo en el término de seis (6) meses; y que a pesar de haber transcurrido dicho término la demandada aún no había desalojado el inmueble".

El día de la vista, luego de reunirse el tribunal con los abogados de las partes en cámara, determinó que no existía controversia de hechos sino de derecho, por lo que concedió un término para presentar una estipulación de hechos. A pesar de esto, de la Minuta de 1ro de julio de 1988, surge que el tribunal expresó que la "controversia en el caso era demostrar la buena fe de la demandante", lo que constituye una determinación de hecho y de derecho.

La estipulación de hechos sometida por las partes fue la siguiente:

1. Que la demandante Carmen González es dueña de cierto inmueble residencial sito en Calle Buenaventura Núm. 368, Santurce, Puerto Rico.

2. Que doña Ramona García posee dicho inmueble en calidad de arrendataria desde julio de 1977, aproximadamente, por el canon de $120.00 mensuales hasta el verano de 1983. En dicha fecha aumentó a 125.00 mensuales y desde septiembre de 1987 se depositó la renta en el Tribunal fijada por DACO en $97.18 mensuales.

3. Que en verano de 1987 la demandante requirió de la demandada el desalojo del referido inmueble.

4. Que en noviembre de 1987 aproximadamente DACO fijó un canon de $97.18 mensuales para el inmueble.

5. Que con fecha 1ro. de octubre de 1987 se notificó a la demandada la intención de la demandante de retirar el antedicho inmueble del mercado de alquileres, la cual fue recibida por la demandada.

Sometido el caso por esta estipulación de hechos, el tribunal dictó una sentencia mediante la cual desestimó la

demanda. Expresó que para poder llegar a considerar las razones económicas como razón para proceder al desahucio era necesario discutir y analizar la buena fe de la demandante, y que la escueta estipulación de hechos no contenía los elementos necesarios para realizar este análisis. No obstante, en la sentencia, el tribunal determinó como hechos probados los siguientes:

> [La demandante] desea retirar la vivienda del mercado de alquileres por consideraciones económicas, esto es [que] el rendimiento del canon de arrendamiento no es suficiente para cubrir los pagos de mantenimiento y contribuciones de la propiedad. O sea, el canon de arrendamiento no justifica la inversión para mantenerla en el mercado de alquiler y se desea retirar para proceder a venderla.([1])

Oportunamente, la parte demandante presentó una moción de reconsideración en la cual solicitó que se dejara sin efecto la sentencia y que se señalara una vista en la cual se le permitiera desfilar prueba en torno a la buena fe en el retiro de la propiedad del mercado de alquileres. La parte demandada se opuso. El tribunal se negó a reconsiderar.

## II

La Ley de Alquileres Razonables, Ley Núm. 464 de 25 de abril de 1946, según enmendada, 17 L.P.R.A. secs. 181–218, fue adoptada para atender la emergencia pública de la escasez de vivienda en el país a raíz de la Segunda Guerra Mundial, que trajo como consecuencia abusos de parte de los propietarios de casas y negocios en cuanto al cobro de cánones excesivos y la imposición a los inquilinos de condiciones opresivas. Véase Exposición de Motivos de la Ley Núm. 464, *supra*, 17 L.P.R.A. sec. 181. Su propósito fue reglamentar los cánones de manera que fueran razonables, *Colón Vélez v. Lebrón*, 97 D.P.R. 154, 159 (1969), y

---

([1]) Estos hechos aparentemente surgieron en la vista en que el tribunal solicitó que se sometiera la estipulación de hechos.

proteger a los inquilinos de aumentos arbitrarios en los alquileres, *Soriano Tavárez v. Rivera Anaya,* 108 D.P.R. 663, 673 (1979). Conforme a este propósito, está revestido de interés público el control de los cánones de arrendamiento de las propiedades de alquiler, incluyendo casas y apartamentos, y los edificios que se utilizan para negocios ya sea con propósitos comerciales o industriales. Esta ley, que en un principio se aprobó con carácter excepcional, se ha convertido en una de carácter especial que ha modificado, en ciertos casos, las normas del arrendamiento.

Aplica a las unidades de vivienda con una renta de menos de doscientos dólares ($200) y a los locales y solares comerciales con un canon de arrendamiento de menos de cuatrocientos dólares ($400). Art. 4 (17 L.P.R.A. sec. 184). Sus extremos más importantes son la predeterminación por una agencia administrativa, actualmente D.A.Co., de la renta máxima a cobrarse, Art. 6 (17 L.P.R.A. sec. 186), y la prórroga obligatoria del contrato de arrendamiento de todas las propiedades sujetas a la ley, Art. 12 (17 L.P.R.A. sec. 192). Es decir, existe una prórroga potestativa para el inquilino y obligatoria para el dueño. La restricción obliga a cualquier propietario que subsiguientemente adquiera la propiedad. Íd.(²) Cualquier cláusula contractual que limite este beneficio será nula. Art. 14 (17 L.P.R.A. sec. 204). No obstante, ello no afecta la naturaleza temporal del contrato de arrendamiento, pues el efecto de la prórroga es dejar indefinido el término del alquiler, pero sin imponer perpe-

---

(²) Igual finalidad se manifiesta en el Art. 15 (17 L.P.R.A. sec. 205), que regula los efectos del cambio de propietario:

"... Toda persona que adquiera una propiedad arrendada quedará sujeta a los términos de esta ley y no podrá reclamar otros derechos que aquellos que en la misma se establecen en favor del propietario original.

"(b) En todo caso de venta, cesión o enajenación de propiedad arrendada, el contrato de arrendamiento que el inquilino tuviera con el dueño anterior se entenderá subsistente y sujeto a la prórroga que especifica el Artículo 12 de la ley.

"(c) Tampoco podrá la persona que adquiera una propiedad arrendada promover contra el inquilino acción alguna de desahucio, desahucio por detentación o para recobrar la posesión de dicha propiedad a no ser por las causas y bajo los t[é]rminos y condiciones que se expresan en los Artículo[s] 12-A a 12-I de esta ley". 1964 Leyes de Puerto Rico 198.

tuidad, debido a que existen unas excepciones por las cuales se puede instar la acción de desahucio. E. Vázquez Bote, *Tratado teórico, práctico y crítico de derecho privado puertorriqueño*, Oxford, Equity Publishing Co., 1992, Vol. IX, pág. 307.

El Art. 12-A (17 L.P.R.A. sec. 193) establece las excepciones a la prórroga obligatoria del contrato de arrendamiento. De acuerdo con éste, el arrendador puede desahuciar: (1) por falta de pago en la renta o canon correspondiente, Art. 12-A(1), 17 L.P.R.A. sec. 193(1); (2) cuando la conducta del inquilino sea inmoral o represente un peligro o estorbo para la propiedad o los vecinos, Art. 12-A(2), 17 L.P.R.A. sec. 193(2); (3) si subarrienda o cede el uso de la propiedad en violación al contrato, Art. 12-A(2A), 17 L.P.R.A. sec. 193(2A); (4) si el inquilino dedica la propiedad a un uso distinto del pautado y ello causa perjuicio al arrendador, Art. 12-A(3), 17 L.P.R.A. sec. 193(3); (5) cuando el inquilino causa daños a la propiedad maliciosa o negligentemente, o, de algún modo, modifica la configuración de la vivienda sin permiso, Art. 12-A(4), 17 L.P.R.A. sec. 193(4); (6) cuando de buena fe el dueño necesita el local para ocuparlo inmediatamente como lugar de vivienda, Art. 12-A(5), 17 L.P.R.A. sec. 193(5); (7) cuando el dueño necesita el local comercial y no tuviera otro local en el mismo edificio, Art. 12-A(6), 17 L.P.R.A. sec. 193(6); (8) por proyectar el propietario la demolición total o parcial del edificio para construir uno nuevo, Art. 12-A(7), 17 L.P.R.A. sec. 193(7), y (9) por subarriendo o cesión no consentido, Art. 12-A(8), 17 L.P.R.A. sec. 193(8).

Con relación al desahucio en que están involucradas propiedades dedicadas a vivienda, el Art. 12-A(5), *supra*, establece que éste procede siempre y cuando sea para ser ocupado inmediatamente por el dueño en calidad de residencia. *Rodríguez Rodríguez v. Tribunal Superior*, 100 D.P.R. 421, 426 (1972). En *Méndez v. Tribl. de Distrito*, 72 D.P.R. 544, 550 (1951), resolvimos que la ley no permite el

desahucio aunque el dueño desee retirar la vivienda del mercado de alquileres para ser ocupada por su hijo, el cual no iba a pagar canon de arrendamiento alguno. Es requisito fundamental, para que proceda esta causal, acreditar la buena fe y la necesidad de recobrar la vivienda. La carga de la prueba la tiene el propietario. *Piovanetti v. Tribunal Superior*, 88 D.P.R. 917, 925 (1963). La ley no sólo priva de la presunción de buena fe del propietario establecida en el Art. 364 del Código Civil, 31 L.P.R.A. sec. 1425,[3] sino que, además, enumera las situaciones en que se presume inexistente. Art. 12-A(5)(a), 17 L.P.R.A. sec. 193(5)(a).[4]

De otra parte, al interpretar el Art. 12-A(6), 17 L.P.R.A. sec. 193(6), sobre locales comerciales, a pesar de que la ley no dispone expresamente para el desahucio de una persona para retirar la propiedad del mercado de alquileres, hemos decidido que el propietario tiene ese derecho independien-

---

[3] "La buena fe se presume siempre, y al que afirma la mala fe de un poseedor corresponde la prueba." 31 L.P.R.A. sec. 1425.

[4] El inciso (5), 17 L.P.R.A. sec. 193(5), dice, en lo pertinente:

"5.   Por necesitar de buena fe la vivienda, para uso personal y ocupación inmediata como sitio de residencia.

"(a) El propietario vendrá obligado a acreditar su buena fe y la necesidad que tiene de recobrar la vivienda, presumiéndose las mismas no acreditadas, sin perjuicio de otros, en los siguientes casos:

"(1) Cuando el propietario tuviere disponible alguna otra vivienda adecuada de su propiedad en la misma localidad en la cual pudiere fijar su residencia.

"(2) Cuando, domiciliado en casa [de] vivienda adecuada, sita en la misma localidad, no estuviere obligado a desalojarla.

"(3) Cuando en cualquier momento durante los seis meses anteriores a la notificación de desalojo indicada en el inciso 5(b) de esta sección se hubiera desalojado vivienda de características similares en edificio propiedad del propietario y éste no la hubiere dedicado, sin justa causa para ello, a residencia propia.

"(4) Cuando, durante el año anterior a la referida notificación de desalojo el propietario hubiere vendido, cedido o arrendado vivienda propia en la cual residía, a menos que pruebe a satisfacción del tribunal que al momento de efectuar tal transacción las circunstancias eran tales que no había razón para suponer el propietario que tendría necesidad de ocupar la casa que ahora trata de recobrar, por haber desalojado la que ocupaba.

"(5) No vendrá obligado el propietario por lo dispuesto en el párrafo (1) que precede cuando sea el arrendatario quien tuviere disponible alguna otra vivienda adecuada, en la misma localidad, en la cual fijar su residencia, ya fuere de su propiedad o a título de arrendatario, siempre que, en este último caso la vivienda fuere substancialmente igual a la que se trata de recobrar y la diferencia en el alquiler no exceda de un tercio."

temente del uso que le vaya a dar, y aun cuando no vaya a utilizarla personalmente. *Roselló Hnos. v. Figueroa*, 74 D.P.R. 432, 438 y 440 (1953). En *Pizá v. Sailles Travel Agency*, 114 D.P.R. 33, 35 (1983), resolvimos que la ley tenía que admitir que el dueño pudiera desalojar al inquilino con estos propósitos, porque de lo contrario se le estaría privando de su propiedad sin un debido proceso de ley. Señalamos que "[n]o puede perderse de vista que las disposiciones de la Ley de Alquileres que obligan a la prórroga del contrato constituyen limitaciones al derecho de propiedad del arrendador y no pueden tomarse livianamente [y que en] la presente década no existe la crisis de viviendas y locales para negocios que había en la década de los años 1940 que motivó la aprobación de dicha ley". También expresamos que "en última instancia, la decisión de retirar o no una propiedad del mercado de alquileres es económica y que tal decisión tiene por base la consideración de lo que produce el local estando arrendado, *vis-á-vis* lo que para el dueño puede implicar económicamente el uso que pueda darle". *Pizá v. Sailles Travel Agency*, supra. Cabe señalar, que para solicitar el desahucio con relación a una propiedad comercial no es necesario acreditar la buena fe.

De todo lo anterior surge, con meridiana claridad, que en este caso, antes de resolver si procedía o no la celebración de una vista para determinar la buena fe, era necesario auscultar lo siguiente: *primero*, si al amparo de la Ley de Alquileres Razonables un propietario puede desalojar a un inquilino porque desea retirar del mercado de alquileres una propiedad dedicada a vivienda, y *segundo*, si la propiedad puede ser retirada con el propósito de ponerla a la venta.

## III

Hace más de cuatro (4) décadas se planteó, aunque no se resolvió por no ser necesario, la constitucionalidad del

requisito establecido en la Ley de Alquileres Razonables de que un propietario, que tenía una propiedad dedicada al mercado de alquileres de vivienda, estaba obligado a mantenerla alquilada aunque interesara retirarla de dicho mercado. *Latoni v. Corte Municipal*, 67 D.P.R. 140 (1947). En dicho caso, expresamos:

Dejamos sin resolver por ser innecesarias para la resolución de este caso dos cuestiones: *Primera*, la disposición de la sección 12(*f*) [actual Artículo 12-A(5)](*5*) de que un arrendador que "habitualmente" ha alquilado su propiedad debe continuar alquilándola, puede ser de dudosa constitucionalidad. El Congreso con gran cuidado dispuso lo contrario en la Ley Federal.(*6*) Dijo en la sección 4(*d*): "Nada en esta Ley se interpretará en el sentido de obligar a persona alguna a vender cualquier artículo o a ofrecer cualquier alojamiento en alquiler." 50 U.S.C.A., App., sección 904(*d*). Como hemos visto el Reglamento Federal 6(a)(6) instrumenta esta renuncia. La Corte de Apelaciones de Emergencia resolvió por tanto que un arrendador no puede ser obligado a continuar alquilando su propiedad; puede desahuciar a un inquilino para vivir él mismo la casa o para dejarla deshabitada. Al así resolver la corte manifestó que "Quizás [la sección 4(*d*)] ... fué incluída en la Ley para evitar dificultades constitucionales." *Taylor* v. *Bowles*, 145 F.2d 833, [8]34 (E.C.A., 1944); *Taylor* v. *Porter*, 156 F.2d 805, 810 (E.C.A., 1946). *CF. Bowles* v. *Willingham*, 321 U.S. 503 [(1943)]; *Yakus* v. *United States*, 321 U.S. 414, 431, 437–38 [(1944)]; *Wilson* v. *Brown*, 137 F.2d 348, 351–52 (E.C.A., 1943); *Block* v. *Hirsh*, 256 U.S. 135 [(1921)]; *Marcus Brown Co.* v. *Feldman*, 256 U.S. 170 [(1921)]; *Levy Leasing Co.* v. *Siegel*, 258 U.S. 242 [(1922)]; *Miranda* v. *Corte*, 63 D.P.R. 161 [(1944)]; *Ex parte Irizarry*, 66 D.P.R. 672, [676 (1946)]; *Roig* v. *People of Puerto Rico*, 147 F.2d

---

(*5*) El Art. 12(f) (actual Art. 12-A(5), 17 L.P.R.A. sec. 193(5)) leía de la siguiente forma: "[s]ólo podrá promoverse el desahucio contra inquilinos en los siguientes casos: ... (f) Cuando el propietario procura de buena fe recuperar la posesión de una vivienda, no dedicada habitualmente a alquiler ... para la inmediata y personal ocupación por él como sitio de residencia, siempre que no tuviera otra propiedad en la cual fijar su residencia en la misma localidad y que por lo menos durante el término de un año antes de la radicación de la demanda de desahucio hubiera vivido en una casa de alquiler ...."1946 Leyes de Puerto Rico 1345–1349.

(*6*) Ley de Emergencia para el Control de Precios de 1942 (*Housing and Rent Act*) aprobada por el Congreso de Estados Unidos de Norteamérica el 20 de enero de 1942 (50 U.S.C. ant. sec. 1881 *et seq.*). La ley estuvo vigente hasta el 31 de julio de 1953.

87 (C.C.A. 1, 1945). *Latoni v. Corte Municipal*, supra, pág. 149 esc. 1.

Ciertamente, existen tales dificultades si se obliga, bajo cualesquiera circunstancias, a un propietario a mantener su propiedad dentro del mercado de alquileres. Eso podría equivaler a una restricción irrazonable de su derecho a disponer de su propiedad y constituir un tipo de expropiación forzosa sin una justa compensación. Art. II, Sec. 9, Const. E.L.A., L.P.R.A., Tomo 1. Además, se le podría estar privando de su propiedad sin un debido proceso de ley. Const. E.L.A., *supra*, Sec. 7. *Rivera v. R. Cobian Chinea Co., Inc.*, 181 F.2d 974, 977 (1950); *Roselló Hnos. v. Figueroa*, supra.[7]

Por lo tanto, consideramos que era necesario reconocer, al igual que hicimos en relación con los locales comerciales, *Roselló Hnos. v. Figueroa*, supra, y *Pizá v. Sailles Travel Agency*, supra, que un propietario puede retirar una propiedad dedicada a vivienda del mercado de alquileres aun cuando no vaya a utilizarla personalmente, en especial cuando existan razones de índole económica para tomar dicha decisión.

---

[7] Bajo la Constitución federal, véase *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435–436 (1982). En éste, el Tribunal Supremo federal expresó:

"Property rights in a physical thing have been described as the rights 'to possess, use and dispose of it.' *United States v. General Motors Corp.*, 323 U.S. 373, 378 (1945). To the extent that the government permanently occupies physical property, it effectively destroys each of these rights ....

"Moreover, an owner suffers a special kind of injury when a *stranger* directly invades and occupies the owner's property.... [P]roperty law has long protected an owner's expectation that he will be relatively undisturbed at least in the possession of his property. To require, as well, that the owner permit another to exercise complete dominion literally adds insult to injury. See Michelman, Property, Utility, and Fairness: Comments on the Ethical Foundations of 'Just Compensation' Law, 80 Harv. L.Rev. 1165, 1228, and n. 110 (1967). Furthermore, such an occupation is qualitatively more severe than a regulation of the use of property, even a regulation that imposes affirmative duties on the owner, since the owner may have no control over the timing, extent, or nature of the invasion." (Énfasis suprimido.)

## IV

La segunda cuestión a discutir es si la propiedad dedicada a vivienda puede ser retirada del mercado de alquileres con el propósito de ponerla a la venta. Los términos de la ley son claros. Ésta no le reconoce facultad al propietario para sustraer un inmmueble del régimen especial con fines de venta. La prórroga obligatoria se extiende a todos los contratos de arrendamiento, siempre que se trate de las propiedades sujetas a la ley y que no existan algunas de las excepciones legales. Ya señalamos que el nuevo adquirente se subroga en las obligaciones del cedente. Art. 15 (17 L.P.R.A. sec. 205). Por lo tanto, una propiedad arrendada, sujeta al régimen de alquileres razonables, tiene que venderse alquilada. De hecho, para prevenir cualesquiera recursos que se pudiera utilizar para evadir la ley, el Art. 12-G (17 L.P.R.A. sec. 200), dispone:

> No se podrá evadir la prórroga involuntaria prescrita en [el Art. 12] mediante la interposición de acciones para recobrar la posesión, de *injuction*, de accesión o de clase alguna que tenga como resultado final el desalojo del inquilino de la vivienda o local de negocio.

No obstante, esto no quiere decir que la prórroga obligatoria sea *ad infinitum*. El nuevo propietario puede intentar un desalojo si existe causa legal para ello, ya que la ley especial se refiere al propietario que necesita del local para su propio uso, cualquiera que éste sea.

En conclusión, opinamos que debió reconocerse que un propietario puede retirar su propiedad del mercado de alquileres para utilizarla en lo que estime conveniente; aunque no pueda solicitar el retiro con el propósito de ponerla a la venta.(8)

---

(8) No obstante, pudiera suceder que sea imposible para la demandante poder vender la propiedad estando arrendada. En ese caso, la restricción impuesta por la ley podría resultar sumamente onerosa e irrazonable, porque la estaría obligando a continuar siendo la propietaria de un inmueble que le está causando pérdidas

## V

Establecidos los dos (2) puntos anteriores, pasemos a discutir el error planteado. En el caso de autos, el tribunal de instancia abusó de su discreción al determinar que en el caso no existía una controversia de hechos y sí de derecho, y que debía dilucidarse mediante la sumisión de una estipulación. Era necesaria la celebración de una vista para determinar la buena fe por parte del propietario para retirar el inmueble del mercado de alquileres. Esto es una cuestión de hecho que, como regla general, requiere la celebración de una vista. *Banco de Santander v. Rosario Cirino*, 123 D.P.R. 613 (1990). La parte demandante recurrente alega razones de índole económica y de salud para retirar la propiedad del mercado de alquileres; mientras que la parte demandada recurrida alega que lo único que persigue la demandante es vender la propiedad. De manera que no habiéndose estipulado la buena fe de la arrendadora, relativa a las razones de índole económica y de salud aducidas para retirar la propiedad del mercado de alquileres, y existiendo una genuina controversia de hecho sobre este punto, el tribunal no debió dictar sentencia a base de las escuetas estipulaciones sometidas por las partes. El foro de instancia debió, en el sano ejercicio de su discreción, celebrar una vista antes de resolver la controversia para determinar la buena fe.

En virtud de lo anteriormente expuesto, revocaríamos la sentencia recurrida.

---

económicas. Sin embargo, dejamos sin resolver, por no ser necesario, si se puede retirar una propiedad para luego ponerla a la venta cuando puedan demostrarse, tanto las razones de índole económica para el retiro, como la imposibilidad de venderla sujeta al alquiler.